```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_April 26, 2021_
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
BLOOMFIELD INVESTMENT RESOURCES    :
CORP.,                             :
                        Plaintiff, :        17 Civ. 4181 (VM)
                                   :
        - against -                :        **DECISION AND ORDER**
                                   :
ELLIOTT DANILOFF,                  :
                                   :
                       Defendant.  :
------------------------------------X
**VICTOR MARRERO, United States District Judge.**

Plaintiff Bloomfield Investment Resources Corp. ("Bloomfield" or "Plaintiff") brought the instant action against Defendant Elliott Daniloff ("Daniloff" or "Defendant") for fraud, breach of contract, promissory estoppel, and unjust enrichment. (See First Amended Complaint ("FAC"), Dkt. No. 51.) Daniloff asserts counterclaims for breach of contract, promissory estoppel, fraud, and failure to indemnify. (See Answer to Amended Complaint ("AAC"), Dkt. No. 52.) Bloomfield and Daniloff's claims are based on two contradictory interpretations of the same transaction. Bloomfield alleges that it loaned $25 million to a company owned by two investment funds managed by ED Capital, LLC and ED Capital Management, LLC (collectively, "ED Capital"), entities entirely owned and controlled by Daniloff, and that it had loaned this money in reliance on Daniloff's fraudulent promises to return it. Daniloff alleges that Bloomfield had

1

represented that it would, and did in fact, invest the $25 million, but Bloomfield failed to treat the money as an investment and abide by the contractual term providing for recovery of the investment over time via trading.

Now before the Court is a premotion letter submitted by Bloomfield regarding its anticipated motion to dismiss Daniloff's counterclaims. (See the "July 6 Letter," Dkt. No. 53-1.) The Court also has before it a letter response from Daniloff (see the "July 27 Letter," Dkt. No. 53-2), and a reply letter from Bloomfield (see the "August 3 Reply Letter," Dkt. No. 53-3). The Court construes Bloomfield's letters as a motion by Bloomfield to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Motion").[1] For the reasons set forth below, the motion is GRANTED.

## I. **BACKGROUND**

### A. FACTS[2]

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

[2] The relevant factual background below, except as otherwise noted, derives from the AAC and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Except when specifically quoted, no further citation will be made to the AAC.

ED Capital is the investment advisor and investment manager for Synergy Hybrid Fund Ltd. and Synergy Hybrid Feeder Fund Ltd. (collectively, the "Synergy Funds"), investment funds incorporated in the Cayman Islands that invest in Russian public and privately held securities. The Synergy Funds hold 100% of the shares of the United Meat Group ("UMG"), a Russian corporation. Bloomfield is an entity under the ultimate control of David and Simon Reuben ("the Rueben Brothers"), wealthy and sophisticated investors.

In November 2011, Bloomfield transferred to UMG the $25 million at the heart of this litigation. According to Daniloff, Bloomfield represented during negotiations that the $25 million transfer constituted an investment in the Synergy Funds made pursuant to three agreements: (1) a Memorandum of Understanding ("MOU") signed by Daniloff and the Reuben Brothers' representative Patrick O'Driscoll (MOU, Dkt. No. 52-1); (2) the Synergy Hybrid Fund Subscription Agreement entered into by the Synergy Funds and Bloomfield (the "Subscription Agreement"); and (3) the Confidential Private Placement Memorandum (the "Memorandum"). Bloomfield, on the other hand, contends that the $25 million was a loan to UMG that Daniloff promised would be repaid with interest.

In the AAC, Daniloff makes the following allegations. Daniloff sought investors for UMG in 2010 and approached the

Reuben Brothers. The Reuben Brothers or their representatives met with Daniloff on multiple occasions to discuss the structure of the investment. Daniloff alleges that throughout those meetings, the Reuben Brothers represented that they intended to make an investment and never stated they planned to make a loan. In various communications about the venture, Daniloff contends that the parties used language such as "proposed investment," "investment," and "invest." (AAC ¶¶ 11-13, 15.) In late 2011, Daniloff and Patrick O'Driscoll entered into the MOU.

The MOU, attached to the AAC,[3] is a single-page document that provides a "summary of the potential Reuben investment in Synergy Hybrid Fund Ltd (SHF)." (MOU.) It notes that "Reuben BVI will invest US $25m in SHF," which "owns 100% of United Meat Company (UMC)," "for approximately 45% of equity." (Id.) It also provides that "Reuben BVI will recover its $25m over time via trading and the shareholding in SHF will be diluted to 25% accordingly." (Id.) The expected completion date for the investment is listed in the MOU as

---

[3] Because the MOU was attached to the AAC, the Court may properly consider it on a motion to dismiss. See Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp., No. 13 Civ. 1725, 2013 WL 3835191, at *2 (S.D.N.Y. July 25, 2013) ("The parties' contract, attached as an exhibit to Defendant's counterclaims, is considered part of the complaint.").

September 15, 2011. The MOU also contains an "[i]llustrative structure" of the investment. (Id.)

Daniloff alleges that had he known that the Reuben Brothers planned to make only a loan, he would have sought other investors and would not have accepted the $25 million from them or entered into any agreements with them, Bloomfield, or any of their representations.

On August 31, 2011, Bloomfield was created for the purpose of investing in the Synergy Funds. On November 4, 2011, Bloomfield entered into the Subscription Agreement, provisions of which Daniloff argues are also consistent with the investment purpose, and the Memorandum. The Subscription Agreement also contains an indemnification provision. On November 11, 2011, Bloomfield transferred $25 million to the Synergy Funds.

On or about June 2013, Bloomfield became dissatisfied with its investment and began pressuring Daniloff to repay the $25 million. It also began asserting that it made an undocumented loan to UMG rather than an investment. On June 16, 2014, Bloomfield initiated a prejudgment attachment proceeding against UMG in the Netherlands, alleging that Bloomfield made an undocumented loan to UMG, not to Daniloff.

Daniloff alleges that Bloomfield violated the Subscription Agreement by mischaracterizing its investment as

a loan, misrepresenting its purpose in investing in the Synergy Funds, and disclosing and publishing the contracts in violation of confidentiality provisions. Daniloff also alleges that Bloomfield breached the MOU by failing to perform according to its terms. Daniloff alleges that the various representations and promises made by Bloomfield discussed in the AAC, combined with its course of conduct, both induced Daniloff into taking actions detrimental to his economic interests and caused him to refrain from taking other actions in reliance on Bloomfield's promises. Bloomfield also "made numerous misrepresentations of material fact" to Daniloff. (AAC ¶ 59.) Daniloff seeks indemnification based on the Subscription Agreement, which Daniloff argues applies through the collateral contract doctrine based on the MOU.

B.   <u>RELEVANT PROCEDURAL HISTORY</u>

On November 18, 2015, ED Capital brought suit against Bloomfield and various other defendants in this Court. On January 7, 2017, ED Capital filed an amended complaint alleging abuse of process, prima facie tort, breach of contract, indemnification, and promissory estoppel. Bloomfield then commenced the instant suit against Daniloff, which the Court determined was related to ED Capital's suit, on July 6, 2017. Bloomfield moved to dismiss ED Capital's

amended complaint, and Daniloff moved to dismiss Bloomfield's complaint.

On April 3, 2018, the Court addressed both motions. ED Capital, LLC v. Bloomfield Invest. Res. Corp., No. 17 Civ. 4181, 2018 WL 1779379 (S.D.N.Y. Apr. 3, 2018). The Court held that the allegations in the ED Capital amended complaint, even when accepted as true, could not adequately support the claims for relief ED Capital sought and therefore dismissed ED Capital's complaint. Id. at *11. By contrast, the Court held that Bloomfield's complaint alleged sufficient facts to survive a motion to dismiss and therefore denied Daniloff's motion to dismiss. Id. On November 30, 2018, the Second Circuit affirmed this Court's dismissal of ED Capital's amended complaint. ED Capital, LLC v. Bloomfield Invest. Res. Corp., 757 F. App'x 26 (2d Cir. 2018).

After the Court rendered its decision, Daniloff filed his Answer on May 24, 2018. (Dkt. No. 21.) In the Answer, Daniloff asserted the same counterclaims as he does in the AAC. By letter dated June 14, 2018, Bloomfield notified Daniloff of alleged deficiencies in the Answer's counterclaims, and Daniloff responded by letter dated June 22, 2018. (Dkt. Nos. 24, 27.) Bloomfield then sent the July 6 Letter. On July 13, 2018, the Court held a conference and instructed Daniloff to respond to the July 6 Letter and

7

Bloomfield to file a reply letter. (See Minute Entry dated July 13, 2018.) The July 23 Letter and August 3 Reply Letter followed. Before the Court ruled on Bloomfield's proposed motion to dismiss, the matter was stayed while the parties discussed settlement. (See Dkt. Nos. 35, 36, 37, 38, 39, 41, 42.) After the Court ordered a status update on the matter on November 12, 2020, the parties informed the Court on December 3, 2020 that no resolution had been reached. (Dkt. No. 44.)

On February 11, 2021, Bloomfield filed the FAC. Daniloff filed the AAC on March 29, 2021. On April 15, 2021, the parties filed a joint letter to the Court asking that the Court accept the July 6 Letter, July 23 Letter, and August 3 Reply Letter, which the parties had previously submitted with respect to dismissal of Daniloff's original counterclaims, in support of and opposition to a motion to dismiss the AAC's counterclaims. (Dkt. No. 53.) The Court does so in the instant Decision and Order.

C.   THE PARTIES' ARGUMENTS

Bloomfield argues that Daniloff's counterclaims must be dismissed for the following reasons. First, Bloomfield contends that the breach of contract claim fails because the MOU is not a binding contract. Even if it were, Daniloff cannot enforce the MOU because of his own failure to perform under that agreement and because Daniloff has failed to allege

Bloomfield breached the MOU. Second, Bloomfield argues that Daniloff's promissory estoppel claim fails because all of the alleged promises stemmed from the MOU, making the claim duplicative. Third, Bloomfield asserts that the fraud claim is untimely and that no actionable misrepresentation has been adequately alleged. Finally, Bloomfield argues that Daniloff cannot seek indemnification under the Subscription Agreement because he cannot enforce that contract.

Daniloff argues that the AAC's counterclaims have been sufficiently alleged for the following reasons. First, Daniloff states that the MOU is a valid contract that Bloomfield breached by seeking to recover its $25 million as a loan repayment rather than recovering the investment over time via trading as outlined in the MOU. Second, Daniloff argues that Bloomfield broke its promises by mischaracterizing the investment as a loan, misrepresenting the purpose in investing in the Synergy Funds, and violating the confidentiality provisions of the Subscription Agreement. Daniloff further contends that these claims can proceed simultaneously if the existence of the contract is disputed. Third, Daniloff argues that his fraud claim is timely under the discovery rule because he did not learn that Bloomfield was claiming that it made a loan rather than investment until June 7, 2017. Fourth, Daniloff argues that the collateral-

contract doctrine, recognized by Cayman Islands law, allows him to enforce promises made to him and for his benefit under the Subscription Agreement based on Bloomfield's entering the MOU.

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. See id. However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation

marks omitted), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Tenney v. Credit Suisse First</u>
<u>Bos. Corp.</u>, No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May
19, 2006). In this context, the Court must draw reasonable
inference in favor of the nonmoving party. <u>See</u> <u>Chambers v.</u>
<u>TimeWarner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002). However,
the requirement that a court accept the factual allegations
in the complaint as true does not extend to legal conclusions.
<u>See</u> <u>Iqbal</u>, 556 U.S. at 678. "A motion to dismiss a
counterclaim is evaluated under the same standard as a motion
to dismiss a complaint." <u>Holborn Corp. v. Sawgrass Mut. Ins.</u>
<u>Co.</u>, 304 F. Supp. 3d 392, 397 (S.D.N.Y. 2018) (citation
omitted).

## III. <u>DISCUSSION</u>

The Court grants the Motion in part and denies the Motion
in part. Specifically, the Court is persuaded that the MOU by
its terms is not a binding preliminary agreement. Nor does
Daniloff have standing to enforce the Memorandum or
Subscription Agreement, including its indemnification
provision. In addition, Daniloff's promissory-estoppel claim
must be dismissed because Daniloff has not sufficiently
alleged detrimental reliance. Daniloff's fraud claim also
fails because it is time barred.

A.   <u>BREACH OF CONTRACT AND INDEMNIFICATION</u>

The Court is not persuaded that the MOU is a binding contract, and consequently, Daniloff has not adequately stated a contract claim against Bloomfield. Under New York law, a binding contract requires "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Tractebel Energy Mktg. v. AEP Power Mktg., Inc., 487 F.3d 89, 95 (2d Cir. 2007). "Ordinarily, where the parties contemplate further negotiations and the execution of a formal instrument, a preliminary agreement does not create a binding contract." Brown v. Cara, 420 F.3d 148, 153 (2d Cir. 2005) (citation omitted). In some instances, however, preliminary agreements may constitute binding contracts. Id.

In order for Daniloff's breach-of-contract claim, which is premised on Bloomfield's alleged failure to adhere to the repayment terms of the MOU, to be viable, the Court must find that the MOU is what is commonly referred to as a "Type I" preliminary agreement.[4] A Type I agreement is one in which

---

[4] This is because even if the Court found that the MOU constituted what is commonly referred to as a "Type II" preliminary agreement, such an agreement "does not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate the open issues in good faith in an attempt to reach the alternate objective within the agreed framework." Teachers Ins. & Annuity Ass'n v. Tribune Co., 670 F. Supp. 491, 498 (S.D.N.Y. 1987). Daniloff is not arguing that Bloomfield failed to negotiate in good faith, however. His claim is that Bloomfield failed to abide by the MOU's terms governing return of Bloomfield's investment. As such, even if the MOU were a Type II agreement, Bloomfield would not be liable for the complained-of breach. The Court's analysis is accordingly limited to whether the MOU is a Type I agreement.

> [t]he parties have reached complete agreement
> (including the agreement to be bound) on all the
> issues perceived to require negotiation. Such an
> agreement is preliminary only in form -- only in
> the sense that the parties desire a more elaborate
> formalization of the agreement. The second stage is
> not necessary; it is merely considered desirable.

Teachers Ins. & Annuity Ass'n v. Tribune Co., 670 F. Supp.
491, 498 (S.D.N.Y. 1987). This type of agreement "binds both
sides to their ultimate contractual objective in recognition
that that contract has been reached, despite the anticipation
of further formalities." Id. Thus, for the terms of the MOU
to be enforceable, the MOU must be a Type I agreement. When
deciding whether an agreement is a Type I agreement, Courts
consider the following factors: (1) whether there is an
express reservation of the right not to be bound in the
absence of a writing; (2) whether there has been partial
performance of the contract; (3) whether all of the terms of
the alleged contract have been agreed upon; and (4) whether
the agreement at issue is the type of contract that is usually
committed to writing. Brown, 420 F.3d at 154.

Applying these factors to the language of the MOU, any
claim that the MOU is a Type I binding preliminary agreement
is implausible. The first factor requires looking at the
language of the agreement to discern whether there is
"explicit language of commitment or reservation." Brown, 420
F.3d at 154. While there "is no explicit reservation in the

MOU, . . . the language is decidedly non-committal." Id. at 154. The MOU contains numerous equivocal terms and provides only a "summary of the *potential* Reuben investment." (MOU (emphasis added).) "Because the language is so non-committal, the absence of an expressed reservation is of little significance." Brown, 420 F.3d at 155; see also Adjustrite Sys., Inc. v. Gab Bus. Servs., Inc., 145 F.3d 543, 549-50 (2d Cir. 1998) (determining that the first factor "strongly supports" finding a document entitled a "proposal" to be nonbinding).

The second factor of partial performance also undercuts any finding that the MOU is plausibly a Type I binding agreement. According to the terms of the MOU, the investment would be completed by September 15, 2011. But the AAC alleges that Bloomfield transferred the $25 million to the Synergy Funds well after the September 15 deadline. The AAC states that the transfer was made on November 11, 2011, *after* the Subscription Agreement was executed. This timing of Bloomfield's performance undermines any argument that the parties intended to be bound by the MOU. Rather, the only plausible conclusion based on these allegations is that it was the Subscription Agreement, not the MOU, that imposed binding obligations upon Bloomfield.

The third factor of whether there are open terms further indicates that the MOU is not a binding agreement. Here, it is clear from the face of the one-page MOU, which by its own terms is only a "summary" of a "potential" investment, that numerous significant details have been left out of the document. (See MOU.) Indeed, the subsequent agreements reached by the Bloomfield and the Synergy Funds reinforces "that much is missing from the MOU." See Brown, 420 F.3d at 155. There is a "strong presumption" against finding that agreements with open terms are binding, Tribune, 670 F. Supp. at 499, and Daniloff has offered no allegations that could plausibly overcome this strong presumption.

The Court declines to conduct any analysis with respect to the fourth factor at this stage. Courts in this district have recognized that "it is nearly impossible to determine at the motion to dismiss stage whether a more formal contract would normally be expected under prevailing industry conditions." See, e.g., Sawabeh Info. Servs. Co. v. Brody, 832 F. Supp. 2d 280, 307-08 (S.D.N.Y. 2011). Regardless, because three of the four factors in the Type I analysis weigh in favor of Bloomfield, there is no need to address the fourth factor. The Court concludes that Daniloff has not sufficiently alleged the existence of a binding Type I

agreement as necessary to give rise to his breach-of-contract claim based on the MOU.

Nor can Daniloff bring any breach-of-contract claims, including for indemnification, arising from the Subscription Agreement or Memorandum. Daniloff lacks standing to bring such claims because he is not a party to those agreements. Daniloff recognizes this and instead seeks to rely on the collateral-contract doctrine.

Under the collateral-contract doctrine, which is applicable in the Cayman Islands, "proof of a second (usu[ally] oral) agreement will not be excluded under the parol-evidence rule if the oral agreement is independent of and not inconsistent with the written contract, and if the information in the oral agreement would not ordinarily be expected to be included in the written contract." ED Capital, LLC v. Bloomfield Invest. Res. Corp., 757 F. App'x 26, 29 (2d Cir. 2018) (citation omitted). Daniloff argues that the collateral-contract doctrine applies in this case such that the Subscription Agreement may be considered by the Court due to the existence of a separate agreement -- the MOU.

Daniloff's claim fails for multiple reasons. As explained above, the MOU does not constitute a binding agreement. Even if the MOU were a valid separate agreement, it would not constitute a collateral contract. In affirming

the Court's prior decision dismissing ED Capital's amended complaint, the Second Circuit explained that given the breadth of the Subscription Agreement, "[i]f Bloomfield (or, indeed, the Synergy funds) intended to give some other party -- like ED Capital -- the right to enforce the provisions of the Subscription Agreement, one would ordinarily expect such terms to be included in the otherwise highly detailed agreement," and therefore "the alleged separate agreement does not qualify as a collateral contract." Id. Under this reasoning, Daniloff, who, like ED Capital, is not a party to the Subscription Agreement, cannot enforce the Subscription Agreement *regardless* of the MOU. Thus, pursuant to the Second Circuit's decision in ED Capital, Daniloff lacks standing to bring claims under the Subscription Agreement.

B.   PROMISSORY ESTOPPEL

Dismissal of Daniloff's promissory-estoppel claim is warranted because Daniloff has not adequately pled detrimental reliance. A claim for promissory estoppel requires demonstrating: "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." Kaye v. Grossman, 202 F.3d 611, 615 (2d Cir. 2000).

Here, even assuming that Daniloff has sufficiently alleged the first two requirements, the Court concludes that

Daniloff has not sufficiently alleged injury. Daniloff claims that he was injured because he failed to seek other investors as a result of his reliance on Bloomfield's representations that it was making an investment and not a loan. But this "claimed injury is at best based upon speculative assumptions." Hedspeth v. Citicorp Individual Bank Ret. Plan, No. 91 Civ. 1471, 1993 WL 204808, at *19 (S.D.N.Y. June 7, 1993). While Daniloff has alleged that "he would have sought other investors," there are no allegations that he actually did forego any alternative offers. (AAC ¶ 24.)

But "promissory estoppel requires that the injury directly result from the reliance, and thus is typically applied where vested or clearly identified rights have been lost." Id.; see also Philo Smith & Co., Inc. v. USLIFE Corp., 554 F.2d 34, 36 (2d Cir. 1977) (concluding that the plaintiffs' claimed "injury in the form of their relinquishment of their opportunity to seek other purchasers . . . hardly seems the sort of irremediable change in position normally associated with the doctrine of promissory estoppel"); Optionality Consulting Pte. Ltd. v. Nekos, No. 18 Civ. 5393, 2019 WL 4523469, at *8 (S.D.N.Y. Sept. 18, 2019) (explaining that "the mere failure to obtain an uncertain prospective benefit does not rise to a sufficient level of unconscionability to warrant the application of the doctrine

of promissory estoppel" (internal quotation marks and citation omitted); Hoffmann v. Boone, 708 F. Supp. 78, 82 (S.D.N.Y. 1989) (noting that under New York law, "[f]oregoing other business opportunities . . . is not enough" to establish injury for a promissory-estoppel claim). Daniloff's promissory-estoppel claim is accordingly dismissed.[5]

C.   FRAUD

Dismissal of Daniloff's fraud claim is warranted because it is untimely. "Under New York law, the statute of limitations applicable to a fraud claim is the later of either (i) six years from the date that the claim accrued or (ii) two years from the time the fraud was discovered or could have been discovered with 'reasonable diligence.'" Liveintent, Inc. v. Naples, 293 F. Supp. 3d 433, 444 (S.D.N.Y. 2018) (quoting N.Y. C.P.L.R. § 213(8)). Daniloff contends that his claim is timely under the second provision.

The Court does not agree. Daniloff argues that he did not discover the alleged fraud -- "that Bloomfield would

---

[5] The Court further observes that the AAC does not properly suggest that Daniloff suffered any other sufficient injury. Whether as a loan or investment, Daniloff received the $25 million needed. To the extent Daniloff claims he suffered monetary or reputational harm as a result of the legal proceedings Bloomfield has brought to recover its money, "in the absence of egregious circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone business opportunities or damage to business reputation." Darby Trading Inc. v. Shell Int'l Trading & Shipping Co., 568 F. Supp. 2d 329, 341 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).

'invest' instead of 'lend'" (July 27 Letter at 3) -- until
Bloomfield brought the instant suit on June 7, 2017, making
his counterclaim, originally filed on May 24, 2018, timely.
But Daniloff's argument is belied by the AAC's allegations
themselves, which indicate that Daniloff discovered the
purported fraud, or could have discovered it with reasonable
diligence, well before Bloomfield brought this suit. The AAC
explicitly alleges that around June 2013, Bloomfield became
dissatisfied with its investment and began asserting that it
made an undocumented loan to UMG rather than an investment.
Moreover, the AAC alleges that on June 16, 2014, Bloomfield
alleged that it made an undocumented loan to UMG in an action
filed in the Netherlands. Thus, by June 2014 at the latest,
Daniloff would have been aware that Bloomfield considered the
$25 million payment to be a loan. See Sejin Precision Indus.
Co., Ltd. v. Citibank, N.A., 726 F. App'x 27, 31 (2d Cir.
2018) (noting that lawsuits may put a claimant on notice of
potential fraud for purposes of the discovery rule).

Daniloff argues that "Bloomfield never affirmatively
took the position that its investment was actually a loan
until it filed this action on June 7, 2017." (Dkt. No. 27, at
3.) The Court is not persuaded. Daniloff's own allegations
unequivocally state that around June 2013, Bloomfield "began
asserting that it made an undocumented 'loan' to UMG rather

than an investment in the Synergy Funds." (AAC ¶ 39.) Nothing in this allegation suggests that Bloomfield had not yet taken an affirmative stance on whether the payment was a loan. Furthermore, Bloomfield's position on the nature of its payment would have been made abundantly clear from the fact that Bloomfield initiated legal proceedings in the Netherlands and alleged therein that it had made a loan to UMG, not an investment. In light of these allegations, Daniloff's claim that he did not discover the purported fraud until the filing of the instant suit is simply implausible. The fraud claim is therefore dismissed as untimely.

## IV.  <u>ORDER</u>

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by plaintiff Bloomfield Investment Resources Corp. to dismiss the counterclaims of defendant Elliott Daniloff pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 53-1) is **GRANTED.**

**SO ORDERED.**

Dated:     New York, New York
           26 April 2021

                                        _____
                                        Victor Marrero
                                        U.S.D.J.

21