**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BLOOMFIELD INVESTMENT
RESOURCES CORP.,

                          Plaintiff,

            *-against-*                                    17-cv-4181 (VM) (SC)

ELLIOT DANILOFF,

                          Defendant.

---

---

# Memorandum of Law in Support of Bloomfield Investment Resources Corp.'s Motion for Attorneys' Fees and Costs

---

**REED SMITH LLP**

599 Lexington Avenue
New York, NY 10022

*Counsel for Bloomfield
Investment Resources Corp.*

**Table of Contents**

Table of Authorities ......................................................................................... iii

Introduction .....................................................................................................1

Factual Background ........................................................................................3

Argument .........................................................................................................5

I. Fee Shifting is Necessary Because Daniloff Defended This
Action In Bad Faith For Several Years Based On "Facts"
For Which He Had No Creditable Evidence...................................................5

II. Bloomfield Should be Awarded $5,130,660.25 For Reasonable
Attorneys' Fees and Costs ......................................................................10

Conclusion .....................................................................................................12

<u>**Table of Authorities**</u>

*Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*,
2019 U.S. Dist. LEXIS 210129 (S.D.N.Y. December 5, 2019) ............................................. 10

*Alyeska Pipeline Serv. Co. v. Wilderness Society*,
421 U.S. 240 (1991) ........................................................................................................ 5

*Angelo, Gordon & Co.*,
2021 U.S. Dist. LEXIS 70271 ....................................................................................... 10

*Auriga Capital Corp. v. Gatz Props. LLC*,
40 A.3d 839 (Del. Ch. 2012) .......................................................................................... 9

*Cent. Freight Lines, Inc. v. Amazon Fulfillment Servs.*,
2019 U.S. Dist. LEXIS 178415 (W.D. Wash. Oct. 15, 2019) .................................. 9

*China Shipping Container Lines Co. v. Big Port Serv. DMCC*,
2020 U.S. Dist. LEXIS 88065 (S.D.N.Y. May 15, 2020) ................................... 7, 8

*Danaher Corp. v. Travelers Indem. Co.*,
2014 U.S. Dist. LEXIS 140779 (S.D.N.Y. Sept. 30, 2014) ................................... 12

*RGC Int'l Inv'rs, LDC v. Greka Energy Corp.*,
2001 Del. Ch. LEXIS 107 (Del. Ch. Aug. 22, 2001) ............................................... 9

*Sierra Club v. United States Army Corps. of Eng'rs*,
776 F.2d 383 (2d Cir. 1985) ........................................................................... 6, 7, 9

*Simmons v. N.Y.C. Transit Auth.*,
575 F.3d 170 (2d Cir. 2009) ......................................................................... 10, 11

*Torah Soft Ltd. v. Drosnin*,
2001 U.S. Dist. LEXIS 19217 (S.D.N.Y. November 27, 2001) ............................. 8

*Vista Outdoor, Inc. v. Reeves Family Tr.*,
2018 U.S. Dist. LEXIS 102224 (S.D.N.Y. May 24, 2018) ................................... 10

Plaintiff Bloomfield Investment Resources Corporation ("<u>Bloomfield</u>") submits this memorandum of law and accompanying Declaration of Steven Cooper ("<u>Cooper Decl.</u>") in support of its Motion For Attorneys' Fees and Costs Under Rule 54(d) ("<u>Fee Application</u>") against defendant Elliot Daniloff ("<u>Daniloff</u>") pursuant to the Court's decision and order, dated May 23, 2023 (ECF no. 108) (the "<u>Decision</u>").[1]

## <u>Introduction</u>

On May 23, 2023, the Court issued its Decision, which found that Bloomfield proved by clear and convincing evidence that Daniloff fraudulently induced Bloomfield to provide a $25 million loan, and that Daniloff breached the parties' loan agreement, which Daniloff "constant[ly]" affirmed and promised to perform. Overall, the Court concluded that Daniloff conducted a "gross, wanton, and willful" scheme to deceive and profit off of Bloomfield that the Court found merited a million dollars in punitive damages. (Decision at 49.)

The Decision provided that Bloomfield could make an application for attorneys' fees and costs under Rule 54(d). (*Id.* at 81.) Bloomfield is entitled to recoup its reasonable attorneys' fees and costs from Daniloff under the "bad faith exception" to the American Rule. That exception is available where, as here, a losing party pursued a defense that (i) "lacks any legal or factual basis" (ii) for an improper purpose.

The Decision establishes that the exception's two elements are satisfied respecting Daniloff's defense of this action. *First*, the Court found that *none* of the "testimony or evidence Daniloff presented" at trial "was credible" or "plausibly supported a finding embodying Daniloff's version of the material facts in dispute," despite many years of litigation, sprawling discovery, and several million dollars spent in attorneys' fees on both sides. *Second*, the Court found that

---

[1]     Defined terms used in this memorandum are the same as those used in the Decision.

Daniloff's refusal to return the loaned money to Bloomfield based on a theory that the Original Agreement, and the November 26 Modification, did not exist, evinced "such wanton dishonesty as to imply a criminal indifference to civil obligations," and was "gross, wanton, and willful" in character.

The record is clear that Daniloff vexatiously and wantonly caused the parties to needlessly litigate for the better part of a decade. Daniloff forced Bloomfield to litigate, and ultimately go to trial, based on a defense that he knew was false and for which he could muster *no* creditable evidence. Indeed, it was *Daniloff* who initiated this legal dispute by first suing *Bloomfield* in 2015 for a declaratory judgment on the same essential subject matter of this action.[2]

Daniloff's actions led to prolonged and expensive litigation. He caused the collection, review and/or production of almost 150,000 pages of documents, and the taking or defending of thirteen depositions. He made numerous frivolous motions and appealed the dismissals of his first action to the Second Circuit *twice*.[3] And as shown at trial, Daniloff delayed and derailed the proceedings by misleading Bloomfield regarding his desire to meaningfully resolve the matter; this extended the litigation, and resulted in additional breaches.

Bloomfield's entitlement to compensation for its reasonable fees under the bad faith exception is manifest. Bloomfield requests an award in the amount of $5,180,660.25 for its attorneys' fees and costs. The fees are reasonable given the tens of millions of dollars in dispute, the length of the proceedings, the reasonable staffing and billing rates, and the complex and fiercely contested nature of the action. As detailed below, and in the Cooper Declaration, such

---

[2]     As detailed below and in the Cooper Declaration, this Fee Application does not seek to recover any fees in connection with the 2015 action and its two related appeals.

[3]     Daniloff filed a Notice of Appeal in this action on June 23, 2023.

award would reflect the actual amounts billed to and paid for by Bloomfield, with appropriate discounting. Accordingly, Bloomfield's Fee Application should be granted in full.

## Factual Background

This case's long history began on November 18, 2015, when Daniloff's company, ED Capital Management LLC ("ED Capital"), brought suit in this Court against Bloomfield and several associated entities seeking, among other things, a declaratory judgment that Bloomfield had never extended a loan to Daniloff, but had instead made an equity investment. (15-cv-9056 ("ED Capital Action"), ECF 1.) On January 5, 2016, this Court granted Bloomfield's motion to dismiss that complaint in its entirety (15-cv-9056, ECF 17), which ED Capital successfully appealed (15-cv-9056, ECF 25 & 30). On remand, Bloomfield filed a second motion to dismiss, which this Court granted on April 3, 2018. (15-cv-9056, ECF 58.) The Second Circuit affirmed that dismissal on December 21, 2018. (15-cv-9056, ECF 62.)

Meanwhile, on June 7, 2017, Bloomfield filed the instant action against Daniloff, which brought claims for fraud and breach of contract, as well as alternative quasi-contract claims. (ECF 1.) Daniloff moved to dismiss that complaint in full (ECF 16), but in the same April 3, 2018 order granting Bloomfield's motion to dismiss the ED Capital Action, this Court denied Daniloff's motion to dismiss Bloomfield's action. (ECF 17.) Daniloff then filed an answer with counterclaims on May 24, 2018 (ECF 21), which Bloomfield moved to dismiss (ECF 29). While that motion was under consideration, the parties undertook discovery.

Throughout both litigations, there were also numerous purported settlement meetings. One set of settlement negotiations progressed so far as to cause the parties to represent to the Court that they had "reached an agreement in principle," for which they jointly requested a stay of the litigation on April 3, 2019 that would last over a year. (ECF nos. 35, 39, 44.) Those discussions were extensive and laborious (Cooper Decl. ¶ 15), but ultimately failed. (ECF 44.)

Notwithstanding, the parties also subsequently conducted a formal mediation before Magistrate Judge Cave in 2021.

Bloomfield filed an amended complaint on February 11, 2021. (ECF 51.) In response, Daniloff filed an amended answer with amended counterclaims on March 29, 2021. (ECF 52.) Bloomfield renewed its motion to dismiss those counterclaims, which the Court granted in full on April 26, 2021. (ECF 54.)

The parties continued discovery, and would ultimately collectively produce almost 150,000 pages of documents, engage in thirteen depositions (a number of which took place in London) and provide recurring and extensive written discovery. (Cooper Decl. ¶ 15.) On October 18, 2022, Daniloff—with no genuine good faith basis—moved for summary judgment, which this Court denied on March 30, 2022 (ECF 90); the case was then set for trial.

A four-day bench trial was held in October 2022, in advance of which the parties submitted voluminous proposed findings of fact and conclusions of law, deposition designations, and pretrial briefs, among other things. (Cooper Decl. ¶ 15.) At trial, the Court heard testimony from seven live fact witnesses. The Court issued the Decision on May 23, 2023, and found that Bloomfield proved its claims for fraud and breaches of contract, and was entitled to compensatory and punitive damages. (Decision at 1-2.) Judgment in the amount of $34,409,179 was entered on June 1, 2023. (ECF 110.)

As relevant to this Fee Application, the Court found that Daniloff failed to adduce any credible evidence that supported his theory of the case, which was that "Bloomfield made an investment in the Synergy Hybrid Fund as an investor and that the $25 million did not represent a loan." (Decision at 30.) Specifically, "the Court did not find that the testimony or evidence Daniloff presented was credible, or that it plausibly supported a finding embodying Daniloff's version of

– 4 –

the material facts in dispute," (*id.* at 26) and that "neither the testimony nor the evidence presented at trial supports Daniloff's contentions." (*Id.* at 42.) Rather, the Court found that:

> email correspondences between the parties starting in 2011 through 2015 reveal that the parties, including Daniloff, ***always*** operated with the understanding that the $25 million constituted a loan, subject to full repayment and consistent with the Original Agreement, and not an investment. ***At no point until he retained counsel in 2015 did Daniloff assert that the funds could be recouped only through the redemption procedure prescribed by the Subscription Agreement***.

(*Id.* at 33 (emphasis added).)

The Court concluded, among other things, that:

> Having considered the nature of the parties' relationship, the considerable amount of money at issue, and Daniloff's repeated deception and failures to return the funds over the course of years despite his constant representations to do so, the Court finds that Daniloff's conduct was indeed gross, wanton, and willful.

(*Id.* at 49.)

## Argument

### I.  Fee Shifting is Necessary Because Daniloff Defended This Action In Bad Faith For Many Years Without Creditable Evidence

The Court's findings demonstrate Bloomfield's entitlement to fee shifting under the bad faith exception.

Rule 54(d) permits a prevailing party to apply for an award of its costs and attorneys' fees. Although the default "American Rule" is that a prevailing party may generally not recover its attorneys' fees absent statutory or contractual authority, the Supreme Court has recognized that federal courts have the inherent equitable power to shift attorneys' fees and costs. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1991). As relevant here, a prevailing party in a litigation may be awarded attorneys' fees and costs under the "bad faith exception" to the American Rule, which is available where the non-prevailing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.*

In the Second Circuit, a prevailing party is entitled to fee shifting under the bad faith exception where there is "clear evidence" that the losing party's contentions were both: (i) "entirely without color," and (ii) "made for reasons of harassment or delay or for other improper purposes." *Sierra Club v. United States Army Corps. of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985). Under this standard, a claim or defense is "entirely without color" when it "lacks any legal or factual basis," and although "there is no precise definition of improper purpose," it may be evidenced by any conduct occurring before or during trial. *Id.*

Here, the Court found that Bloomfield proved by clear and convincing evidence that Daniloff induced Bloomfield to provide a loan on false pretenses and then intentionally interposed a factually baseless legal defense in bad faith—*i.e.*, denying the very existence of the loan agreement—to vexatiously delay and defray his obligation to repay. Daniloff knew that his actions and his denial of the Loan Agreement's existence would leave Bloomfield with no reasonable recourse but to pursue litigation, so he first commenced his own frivolous federal lawsuit, and then aggressively opposed Bloomfield's action based on defenses that were objectively and subjectively baseless. The Decision establishes both elements of the bad faith exception: that Daniloff's fundamental theory of the case was factually baseless and that he litigated that theory for vexatious and improper purposes. *Sierra Club*, 776 F.2d at 390.

*First*, the Court found that Daniloff failed to present *any* evidence that even "plausibly" supported his alternative theory of the case, which was that "Bloomfield made an investment in the Synergy Hybrid Fund as an investor and that the $25 million did not represent a loan." (Decision at 30.) Specifically, "the Court did not find that the testimony or evidence Daniloff presented was credible, ***or that it plausibly supported a finding embodying Daniloff's version of the material facts in dispute***." (*Id.* at 26 (emphasis added).)

– 6 –

As the Court explained, although Daniloff attempted to "characterize[] his discussions with Bloomfield as 'unsuccessful attempts to correct Reuben's unfounded belief that he or Bloomfield made a loan" to Daniloff, "neither the testimony nor the evidence presented at trial supports Daniloff's contentions." (*Id.* at 42.) Rather, the Court found that: "At no point until he retained counsel in 2015 did Daniloff assert that the funds could be recouped only through the redemption procedure prescribed by the Subscription Agreement." (*Id.* at 33 (emphasis added); *see also id.* at 35-36 ("Even if, as Daniloff contends, Bloomfield's understanding of their arrangement as a loan agreement was mistaken, Daniloff consistently failed to correct Bloomfield's supposedly mistaken belief … despite being regularly made aware of their beliefs over the course of nearly four years.").) The Court further found that Daniloff "was not a credible witness" and his defense theory was "inconsistent" and "contradictory," and that he had no plausible response when "confronted with clear evidence demonstrating that … he failed to dispute any of Bloomfield's recitation of the Original Agreement in the emails introduced into the record." (*Id.* at 25-27.)

The Court's finding that Daniloff failed to present *any* "plausibl[e]" evidence in support of his core defense theory (*id.* at 26) is sufficient to establish the first element of the bad faith exception. *Sierra Club*, 776 F.2d at 390; *accord China Shipping Container Lines Co. v. Big Port Serv. DMCC*, 2020 U.S. Dist. LEXIS 88065, at *19 (S.D.N.Y. May 15, 2020) (party's arguments were frivolous; "a contention is colorable when it has *some* legal and *factual* support, *considered in light of the reasonable beliefs of the individual making the claim*") (emphasis added).

*Second*, Daniloff aggressively litigated—both offensively and defensively—the actions "for reasons of harassment or delay or for other improper purposes." The Court found Daniloff engaged in fraudulent inducement, "repeated deception," and refusals to return the loaned money to Bloomfield. His theory that the parties had not entered into the Original Agreement or the

November 26 Modification was unsupported, and contradicted by "his constant representations" that he would perform under those agreements. This evinced "such wanton dishonesty as to imply a criminal indifference to civil obligations," and was "gross, wanton, and willful" in character. (Decision at 46, 49.)

Daniloff also used long delays under false pretenses to make matters difficult for Bloomfield. There were numerous purported settlement meetings, some memorialized in writings, which progressed so far as to cause the parties to represent to the Court that they had "reached an agreement in principle," which resulted in a stay of the litigation that lasted over a year. (ECF nos. 35, 39, 44.) The parties even conducted a formal mediation. These resulted in false promises and hopes, and simply strung out matters and caused Bloomfield to incur even more attorneys' fees in costs in having to supplement its claims with evidence of these bad acts and further breaches.

The Court ultimately found that although Daniloff subjectively knew that the parties had entered into a loan agreement, which he "constant[ly]" affirmed (Decision at 49), that he deliberately planned to refuse repayment and eventually interpose a legal defense that was unmoored from reality—for which he was unable to present *any* "plausible" evidence after almost a decade. (*Id.* at 26.)  Daniloff apparently did this so that he could keep and spend the money and eventually force Bloomfield to take legal action and settle for a steep discount. (*See id.* at 35 (noting that Daniloff "regularly over-valued his investment fund, which allowed him, through ED Capital, to acquire higher management and performance fees annually," and that he "also allegedly made extravagant purchases of luxury vehicles for himself and family members").) *Accord Torah Soft Ltd. v. Drosnin*, 2001 U.S. Dist. LEXIS 19217, *15 (S.D.N.Y. November 27, 2001) ("a party that knowingly gambles on an unreasonable legal theory in order to achieve a secondary gain," such as "leveraging of a settlement," is "improperly motivated").

– 8 –

The record is clear that Daniloff intentionally caused the parties to litigate for the better part of a decade on the basis of "facts" that he knew were false. Daniloff thus defended this action with an improper purpose. *E.g.*, *RGC Int'l Inv'rs, LDC v. Greka Energy Corp*., 2001 Del. Ch. LEXIS 107, at *73-74 (Del. Ch. Aug. 22, 2001) (awarding fees under exception where defendant "purposefully stiffed" the plaintiff and forced litigation "to try to force [plaintiff] to settle for pennies on the dollar," where "litigation would not have been necessary if [the defendant] had behaved in a minimally responsible fashion"); *id.* (citing caselaw for proposition that bad faith exception can be satisfied where losing party "resort[s] to burdensome and protracted litigation in hopes of discouraging the plaintiffs from enforcing their contractual rights despite the indefensibility of the defendant's legal position"); *Auriga Capital Corp. v. Gatz Props. LLC*, 40 A.3d 839, 880-81 (Del. Ch. 2012) (bad faith exception applied where party litigated "factually implausible assertions" and "generally rais[ed] the costs of litigation in order to induce a settlement," among other things), *aff'd*, 59 A.3d 1206 (Del. 2012); *Cent. Freight Lines, Inc. v. Amazon Fulfillment Servs.*, 2019 U.S. Dist. LEXIS 178415, at *4-5 (W.D. Wash. Oct. 15, 2019) (bad faith exception may entitle party to legal fees incurred as a result of a "(1) intentional and calculated action that (2) left the plaintiff with only one course of action: that is, litigation."); *Sierra Club*, 776 F.2d at 391 (district court did not abuse its discretion in finding party's "manipulative and deliberately deceptive" litigation conduct was improperly motivated; noting a finding that "a frivolous position will often signal an improper purpose").

Daniloff accomplished his goal: he made Bloomfield, since 2015, defend, and then pursue, complex and intensive litigation (with multiple appeals), incur millions of dollars in legal fees and suffer unquantifiable business disruptions. The Court's findings in its comprehensive Decision make clear that Bloomfield is entitled to its reasonable attorneys' fees and costs.

## II.     Bloomfield Should be Awarded $5,180,660.25 For Reasonable Attorneys' Fees and Costs

The attorneys' fees and costs sought by Bloomfield are reasonable under New York law. As detailed in the Cooper Declaration, Bloomfield seeks a total of $5,180,660.25 in attorneys' fees and costs to pursue this action. These fees were reasonable in light of the complexity and intensity of the dispute, and the resultant need to retain sophisticated counsel. Bloomfield prevailed on all of its claims in this needless litigation, and should be compensated for its fees and expenses.

The rates charged by Bloomfield's attorneys at Reed Smith were reasonable as a matter of law. The vast majority of attorney hours were billed at rates well under $1000 per hour, and no attorney ever billed above a rate of $1280, which was the final 2023 rate charged by Bloomfield's lead trial counsel, Steven Cooper. (Cooper Decl. ¶ 7.) These rates were well within the confines of what Southern District courts find to be presumptively reasonable for sophisticated commercial litigations. *Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 2019 U.S. Dist. LEXIS 210129, *8 (S.D.N.Y. December 5, 2019); *Vista Outdoor, Inc. v. Reeves Family Tr.*, 2018 U.S. Dist. LEXIS 102224, at *19 (S.D.N.Y. May 24, 2018) (hourly rates up to $1,260 in 2018 were "not excessive in the New York City 'big firm' market"); *Angelo, Gordon & Co.*, 2021 U.S. Dist. LEXIS 70271, at *3 (rates of $1,175 and $1,350 per hour for partners at large law firm, "though on the higher end, [were] comparable to rates awarded in this jurisdiction"); *see also Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) ("The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.").

The total quantity of work expended on this action was also reasonable and consistently reflected relatively lean partner and associate staffing for a dispute of this kind, which included extensive and sophisticated motion practice and sprawling discovery with 13 depositions, multiple

of which took place in London, and almost 150,000 pages of documents produced. (Cooper Decl. ¶ 15.) Indeed, Bloomfield's attorney team from mid-2021 through trial was primarily comprised of only one partner and two associates, which was generally consistent with Reed Smith's staffing model throughout the life of the matter. (*Id.* ¶¶ 2-6.)[4]

Bloomfield's requested fee award reflects the tasks that were necessary to prevail in this lawsuit. Specifically, Bloomfield seeks costs and fees incurred principally in: (1) initial factual diligence and legal research; (2) preparing lengthy pleadings; (3) analyzing and strategizing in response to Daniloff's answer, several affirmative defenses and counterclaims; (4) successfully defending its claims from Daniloff's motion to dismiss; (5) successfully pursuing its motions to dismiss Daniloff's counterclaims (and, eventually, a motion to reconsider dismissal); (6) collecting, reviewing and producing voluminous documents to Daniloff; (7) reviewing and analyzing Daniloff's productions; (8) propounding and responding to written discovery; (9) addressing discovery disputes; (10) taking and defending 13 party and non-party depositions, including ones in London; (11) participating in extensive settlement negotiations and related diligence; (12) preparing submissions for and participating in mediation; (13) successfully defending against Daniloff's summary judgment motion; (14) preparing extensive written submissions for trial; and (15) preparing for and conducting a four-day bench trial, during which seven witnesses testified. (Cooper Decl. ¶ 15.)

All of this work was detailed contemporaneously in the firm's time entry system and submitted to Bloomfield in periodic invoices. (*Id.* ¶ 8.) The amount of costs and attorneys' fees requested is not the total sum of those invoices, but the "amount actually paid to counsel by paying

---

[4]    Given the length of this action, numerous attorneys left Reed Smith and needed to be replaced, causing further disruptions and difficulties.

clients," Bloomfield, which "is compelling evidence of a reasonable market rate." *Danaher Corp. v. Travelers Indem. Co.*, 2014 U.S. Dist. LEXIS 140779, at *2 (S.D.N.Y. Sept. 30, 2014). Thus, Bloomfield's invoices more than suffice to establish the reasonableness of the charged rates and hours.

Reed Smith's rates and hours were reasonable, and were ultimately discounted further by over half a million dollars. (Cooper Decl. ¶ 10.) There is no good basis to discount Reed Smith's fees again, and Bloomfield should be awarded the amount of $5,180,660.25.

<u>**Conclusion**</u>

For the foregoing reasons, Bloomfield respectfully requests an order requiring Daniloff to reimburse it for $5,180,660.25 in reasonable attorneys' fees and costs Bloomfield incurred in connection with this action. If this Fee Application is granted, Bloomfield reserves the right to submit an additional bill of costs for the expenses incurred in connection with its preparation.

Dated:   June 27, 2023
       New York, New York

Respectfully submitted:

**REED SMITH LLP**

*/s/ Steven Cooper*
Steven Cooper
Zachary Kaye
Casey J. Olbrantz
599 Lexington Avenue
New York, NY 10022
212-521-5400
scooper@reedsmith.com
zkaye@reedsmith.com
colbrantz@reedsmith.com