UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLOOMFIELD INVESTMENT RESOURCES CORP., <br><br> Plaintiff, <br><br> -against- <br><br> ELLIOT DANILOFF, <br><br> Defendant. | Case No. 1:17-cv-4181-VM-SLC |

**MEMORANDUM OF LAW IN OPPOSITION TO
THE APPLICATION OF BLOOMFIELD INVESTMENT RESOURCES CORP.
FOR ATTORNEYS' FEES AND COSTS**

**TARTER KRINSKY & DROGIN LLP**

1350 Broadway
New York, NY  10018

*Counsel for Defendant Elliot Daniloff*

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................................ 1
BACKGROUND ............................................................................................................................ 4
LEGAL STANDARD .................................................................................................................... 8
ARGUMENT ................................................................................................................................. 9
    I.    MR. DANILOFF'S DEFENSES ARE "COLORABLE" BECAUSE HE HAS SUPPORTED THEM WITH WRITTEN AGREEMENTS EXECUTED BY BLOOMFIELD'S REPRESENTATIVES. ........................................................................ 9
    II.   BLOOMFIELD HAS FAILED TO DEMONSTRATE THAT MR. DANILOFF HAS DEFENDED AGAINST BLOOMFIELD'S CLAIMS FOR AN "IMPROPER PURPOSE". ........................................................................................................................ 11
    III.  BLOOMFIELD HAS FAILED TO PROPERLY SUPPORT ITS CLAIM FOR ATTORNEYS' FEES. .................................................................................................... 13
CONCLUSION ............................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Auriga Capital Corp. v. Gatz Properties, LLC*,
  40 A.D.3d 839 (Del. Ch. 2012)...................................................................................................13

*Browning Debenture Holders' Committee v. DASA Corp.*,
  431 F. Supp. 959, 964 (S.D.N.Y. 1976).....................................................................................12

*Browning Debenture Holders Committee v. DASA Corp.*
  560 F.2d 1078 (S.D.N.Y. 1977).............................................................................................8, 12

*Central Freight Lines, Inc. v. Amazon Fulfillment Servs.*,
  441 F. Supp.3d 1128 (W.D. Wash. 2020)..................................................................................13

*China Shipping Container Lines Co. LTD v. Big Port Service DMCC*,
  No. 15-cv-2006 (AT) (DF), 2020 WL 3966014 (S.D.N.Y. May 15, 2023) ..............................12

*Eiseman v. Greene*,
  204 F.3d 393 (2d Cir. 2000).........................................................................................................9

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)...................................................................................................................13

*Nemeroff v. Abelson*,
  620 F.2d 339 (2d Cir. 1980)....................................................................................................9, 10

*Sauer v. Xerox Corp.*,
  95 F. Supp. 2d 125 (W.D.N.Y. 2000) .....................................................................................8, 9

*Sierra Club v. United States Army Corps of Engineers*,
  776 F.2d 383 (2d Cir. 1985).................................................................................................11, 12

*Torah Soft Ltd. v. Drosnin*,
  No. 00 Civ. 5650 (JCF), 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001) ..................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54(d) .........................................................................................................................1

Defendant Elliot Daniloff ("Defendant" or "Mr. Daniloff") submits this memorandum of law in opposition to the Application of Plaintiff Bloomfield Investment Resources Corporation ("Plaintiff" of "Bloomfield") for Attorneys' Fees and Costs under Federal Rule of Civil Procedure 54(d) filed on June 27, 2023 (the "Fee Application" or "Fee App.") (ECF Nos. 114, 115, 116).

## PRELIMINARY STATEMENT

Non-party David Reuben ("Mr. Reuben") is a wealthy, experienced, highly sophisticated, and now disgruntled investor who is unhappy with a $25 million investment made by Bloomfield, a company he controls, in non-party Synergy Hybrid Fund (the "Fund"), managed by ED Capital,[1] a company owned by Mr. Daniloff. Bloomfield's investment in the Fund is memorialized in a written and fully executed Subscription Agreement between Bloomfield and the Fund. The Fee Application arises from Bloomfield's action against Mr. Daniloff seeking to avoid its obligations under its Subscription Agreement with the Fund. Bloomfield asserted in this action that it should not be held to its contractual commitments because it executed its Subscription Agreement with the Fund for the sole purpose of disguising Mr. Reuben's alleged undocumented loan to Mr. Daniloff to induce financial institutions into making loans to a company of which Mr. Reuben would own 25%. (ECF No. 108 at 4, 5, 14 ("Decision" or Dec.").) Despite having directed Bloomfield to execute the Subscription Agreement with the Fund, Mr. Reuben later authorized Bloomfield to sue Mr. Daniloff and, in this suit, to urge this Court to treat that contract as a nullity, and, instead, enforce non-party Mr. Reuben's alleged oral loan agreement with Mr. Daniloff.

In October 2022, the Court held a four-day trial of Bloomfield's claims. In support of its argument to nullify the Subscription Agreement between itself and the Fund, Bloomfield presented at trial various communications and testimonial evidence purportedly giving rise to the alleged

---

[1] Unless otherwise indicated, capitalized terms not defined herein shall have the meanings given them in the Decision.

oral loan agreement between Mr. Reuben and Mr. Daniloff and supposedly supporting the assertion that its Subscription Agreement was a mere obfuscation to disguise Mr. Reuben's alleged oral agreement to induce third-party banks into making loans from which Mr. Reuben would benefit. (Dec. at 14.)

In opposing Bloomfield's claim, Mr. Daniloff argued that Bloomfield's Subscription Agreement with the Fund is an enforceable contract, and that Bloomfield could not rely on any alleged oral agreement between third parties to avoid its obligations thereunder. In support of his defense, Mr. Daniloff presented documentary evidence, including a written memorandum of understanding confirming the investment. Prepared by Mr. Reuben's associate, and making no mention of any loan (the "MOU") and the written, fully executed Subscription Agreement with an accompanying private placement memorandum (the "PPM") setting forth the terms of Bloomfield's investment. Mr. Daniloff also presented written statements by Mr. Reuben's associates confirming their understanding that Bloomfield was making an investment in the Fund, as well as testimony further confirming the parties' agreement that Bloomfield's transfer of $25 million to the Fund was a *bona fide* investment as provided for in those documents.

On May 23, 2023, the Court issued the Decision[2] in favor of Bloomfield and directing Mr. Daniloff to pay damages for his alleged breach of an alleged oral agreement of which he was not aware, to which he never agreed, and to which Bloomfield was not a party. (ECF No. 108.) In the Decision, the Court did not consider whether the Subscription Agreement was an enforceable agreement under which Bloomfield was obligated to perform. Nor did the Court consider whether it should entertain enforcing an alleged oral scheme to artificially inflate a company's balance sheet to induce banks to make loans from which Mr. Reuben would benefit.

---

[2] Mr. Daniloff has appealed the Decision. (ECF No. 113.)

2

Instead, the Court treated the MOU, Subscription Agreement, and PPM as nullities, entirely disregarding the copious documentary and testimonial evidence Mr. Daniloff had adduced at trial. (Dec. 25-26.)  Rather than consider whether Mr. Daniloff had proved the existence of an enforceable Subscription Agreement between Bloomfield and the Fund, the Court focused on whether Mr. Daniloff had successfully proved the non-existence of the alleged oral loan scheme. (Dec. 25-26.)

Although the court conceded that "the parties executed the Subscription Agreement," the Court disregarded that agreement and Mr. Daniloff's other documentary evidence, finding that "Daniloff failed to present credible or compelling evidence indicating the operative feature of the Subscription Agreement that served to govern the parties' relationship and the specific transaction they entered into." (Dec. at 60-61.)  In addition, the Court found that Mr. Daniloff's testimony concerning the non-existence of the alleged oral agreement was "inconsistent or contradictory and his explanations unpersuasive," that "he was not able to remember salient events . . . that were vital to the [alleged oral agreement]" (Dec. at 25) and that he "fail[ed] to correct the parties' supposedly erroneous understanding" of their agreement (Dec. at 26).  Based on these and other findings, the Court ruled in Bloomfield's favor and provided Bloomfield with the opportunity to submit this Fee Application. (Dec. at 81.)

In the Fee Application, Bloomfield requests that this Court ignore the well-established "American Rule" that each party is responsible for its own legal fees on the ground that Mr. Daniloff's defense – based on documents fully executed by Bloomfield or its representatives at the direction of Mr. Reuben, written statements made by Mr. Reuben's own associates, and copious testimony – was in "bad faith" because the Court ultimately accepted that an alleged oral scheme trumped the undisputed written contractual documents. (Fee App. at 6.)

3

Bloomfield has failed to identify a single legal authority supporting its argument that it is entitled to attorneys' fees because instead of acceding to Bloomfield's claims, Mr. Daniloff raised a defense – grounded in the unremarkable axiom that parties' written agreements should be enforced according to their terms – to defend himself against Bloomfield's efforts to avoid its obligations under the Subscription Agreement and PPM. Indeed, it simply cannot be said that the existence of the oral agreement that purportedly nullified the Subscription Agreement and PPM was so clearly memorialized that Mr. Daniloff's unawareness of its existence was "bad faith."[3] Because Bloomfield has failed to demonstrate any "bad faith" by Mr. Daniloff, the Fee Application should be denied.

## BACKGROUND

Mr. Daniloff is the owner and director of ED Capital. ED Capital manages the Fund, which wholly owned Russian poultry producer UMG. Non-party Mr. Reuben is a highly sophisticated self-made billionaire based in London with longstanding business interests and investments in Russia. In late 2010, Mr. Reuben and Mr. Daniloff discussed a potential investment by Mr. Reuben in an agricultural project. The parties executed the MOU confirming that the transaction would be an investment. (D. Ex. C.) In a later face-to-face meeting, the parties agreed that Bloomfield would execute the Subscription Agreement and transfer $25 million to the Fund as an equity investment in the Fund governed by the terms of the Subscription Agreement and corresponding PPM. (D. Ex. N.) Thereafter, Mr. Reuben created Plaintiff Bloomfield to make the investment in UMG. Mr. Reuben also directed his agent to execute a separate agreement with Mr. Daniloff (D. Ex. I) providing that "Reuben BVI will invest US $25m in [the Fund] for approximately 45% of

---

[3] Even the court had to piece together inferences from emails and other bits of documentary and testimonial evidence to cobble together support for Mr. Reuben's alleged multi-faceted oral agreement with Mr. Daniloff. (Dec. at 54-65.)

4

equity," and "Reuben BVI will recover its $25m over time via trading and the shareholding in [the Fund] will be diluted to 25% accordingly." (D. Ex. C.)  In November 2011, Bloomfield executed the Subscription Agreement and wired $25 million to the Fund.

Mr. Reuben eventually became dissatisfied with Bloomfield's investment and wanted Bloomfield's $25 million repaid to him personally, even though the Fund was using that money as described in the Subscription Agreement and PPM.  The Subscription Agreement did not provide for Bloomfield's investment to be transferred to Mr. Reuben.  Rather, Bloomfield had agreed that it could recover its investment only through the redemption process set forth in the Subscription Agreement and PPM.  Determined to avoid the contractually agreed upon redemption process, Mr. Reuben disavowed the Subscription Agreement and PPM – even though he was not a party – and declared instead that contrary to the clear terms set forth therein, Bloomfield's investment in the Fund was actually a loan made by Mr. Reuben directly to Mr. Daniloff.

To avoid the written, fully executed Subscription Agreement between Bloomfield and the Fund, Mr. Reuben recast those documents as a mere obfuscation in furtherance of an alleged oral scheme to disguise his loan to Mr. Daniloff as Bloomfield's equity investment in the Fund.  Mr. Reuben claimed that he had engaged in this obfuscation for the purpose of inflating UMG's balance sheet to induce Russian banks to make loans to UMG that would benefit Mr. Reuben through a 25% stake in the company.  (Dec. at 14.)  To justify his demand for Bloomfield's investment to be paid to him immediately, Mr. Reuben claimed that the alleged loan had come due under to the terms of the oral agreement and thus, he was entitled to "repayment" immediately.  In response, Mr. Daniloff has insisted that Bloomfield abide by the redemption process provided for in the written Subscription Agreement and PPM.  As a result, Mr. Reuben caused Bloomfield to

5

commence this action to nullify these documents and enforce his alleged oral agreement with Mr. Daniloff.

In support of its argument that the Court should nullify the written, fully executed Subscription Agreement, Bloomfield presented at trial various communications and testimonial evidence purportedly giving rise to Mr. Reuben's alleged oral loan agreement with Mr. Daniloff. Bloomfield asserted that by taking bits and pieces of these different communications and testimony the Court could cobble together a multifaceted oral agreement between Mr. Reuben and Mr. Daniloff that would confirm that the written, fully executed Subscription Agreement was a mere obfuscation to disguise an alleged oral scheme to artificially to inflate UMG's balance sheet for the purpose of inducing Russian banks into making loans that would benefit Mr. Reuben.

To defend against Bloomfield's claims, Mr. Daniloff put forth Bloomfield's and the Fund's written, fully executed Subscription Agreement and accompanying PPM. Mr. Daniloff also put forth written statements by Mr. Reuben's associates confirming the "complex mechanism within the Fund that allows investors to redeem their funds," (D. Ex. S) and the fact that "the Directors of the Fund have full and total discretion over any redemptions from the Fund," and that Bloomfield had "signed a full-blown subscription agreement with the Fund managed by [Mr. Daniloff], in the same format as one would for any hedge fund investment." (D. Ex. AAA.) In addition to these and other documents, Mr. Daniloff presented testimonial evidence confirming the parties' agreement that Bloomfield's transfer of $25 million was a *bona fide* investment as provided for in the Subscription Agreement. Based on this evidence, Mr. Daniloff argued that Bloomfield could not avoid its contractual obligations to the Fund based on a non-existent oral loan agreement by two third parties.

In the Decision, the Court did not consider whether Mr. Daniloff had proved the existence of an enforceable agreement between Bloomfield and the Fund under which Bloomfield was required to perform but focused instead on whether Mr. Daniloff had proved the non-existence of the alleged oral agreement. With respect to the documentary evidence Mr. Daniloff had adduced, the Court did not consider whether the Subscription Agreement (i) reflected mutual assent, which it did, (ii) expressed by a valid offer and acceptance, which it did, (iii) for adequate consideration, which there was, and (iv) whether the Subscription Agreement was legal, which it was.[4] Instead, the Court dismissed the Subscription Agreement as a nullity. Likewise, the Court disregarded the written statements of Mr. Reuben's own associates showing that Bloomfield understood that the money was an investment, declaring without explanation that "[d]espite the characterization of the funds as an 'investment' in those emails, the terminology does not reflect whether the parties believed the funds were a true 'investment' into the [Fund][.]" (Dec. at 7, fn. 3.) Consistent with its treatment of Mr. Daniloff's documentary evidence, the Court disregarded the testimonial evidence Mr. Daniloff had adduced at trial. The Court summarily dismissed Mr. Daniloff's own testimony as "inconsistent or contradictory and his explanations unpersuasive," and declared that "he was not able to remember salient events … that were vital to the [alleged unwritten agreement]."

By contrast, the Court accepted Bloomfield's assertion that non-party Mr. Reuben and Mr. Daniloff had entered into an oral agreement. Although Bloomfield failed to adduce any evidence that this agreement had been memorialized in any form, the Court, based on scattered

---

[4] Neither did the Court consider whether it should entertain enforcing an alleged oral scheme to artificially inflate a company's balance sheet to induce banks to make loans to the company for the benefit of the party claiming the existence of such an agreement. To the contrary, the Court based its decision in part on its specific finding that the Fund "would serve as a conduit for the loan proceeds," and "[a]t no point, to Reuben's understanding, was this channeling of the loan proceeds through the [Fund] actually meant to be a true investment into the fund." (Dec. at 7.)

7

communications over years, and pieces of carefully selected testimony, cobbled together a complex, multi-faceted scheme by which (i) Mr. Reuben would create and fund Bloomfield with $25 million (Dec. at 5), (ii) Bloomfield would transfer Mr. Reuben's $25 million to the Fund in a round-trip transaction that would immediately return the money to Mr. Reuben's control (Dec. at 6-7), (iii) Mr. Daniloff would allegedly seek to induce Russian banks to make loans to UMG by representing Mr. Reuben's $25 million as UMG's cash on hand (Dec. at 6), (iv) Mr. Reuben would get 50% of UMG as security (Dec. at 7), (v) after two years Mr. Reuben could transfer the $25 million to an account of his choosing (Dec. at 6-7), and (vi) Mr. Reuben would retain 25% of UMG in return for his role in the scheme (Dec. at 7).

On the basis of its finding that the alleged oral scheme to use Mr. Reuben's alleged disguised loan to artificially inflate UMG's balance sheet for the purpose of inducing Russian banks to make loans that would benefit Mr. Reuben, the Court ruled in Bloomfield's favor. (Dec. at 25-26.)

## **LEGAL STANDARD**

Absent an agreement between the parties or a specific statutory provision, courts in this district apply "the American Rule" pursuant to which "every party to a case bears its own attorneys' fees." *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078, 1087 (S.D.N.Y. 1977) (citations omitted). The American Rule will only be disregarded "where a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* (citations omitted). This high standard requires that the party seeking an award of attorneys' fees must provide "clear evidence" that the opposing party asserted claims or defenses: (i) "entirely without color," *Sauer v. Xerox Corp.*, 95 F. Supp. 2d 125, 133 (W.D.N.Y. 2000) (quoting *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986) (citations omitted)); and (ii) "for reasons of harassment or delay or for other improper purposes.'" *Id.* Moreover, the Second Circuit

"interpret[s] the bad faith standard restrictively," *Eiseman v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)), and such an award demands "'a high degree of specificity in the factual findings of [the] lower courts.'" *Sauer*, 95 F. Supp. at 133.

## ARGUMENT

Bloomfield cannot obtain an award of attorneys' fees unless it establishes that (i) Mr. Daniloff's defense of this action was not "colorable," and (ii) Mr. Daniloff asserted his defense for an "improper purpose." Bloomfield has failed to cite any legal authority supporting its argument that a claim or defense based on the enforceability of a written, fully executed agreement is not "colorable." Likewise, Bloomfield has failed to cite any legal authority supporting its argument that a party who litigates such a defense does so for an "improper purpose."

### I.   MR. DANILOFF'S DEFENSES ARE "COLORABLE" BECAUSE HE HAS SUPPORTED THEM WITH WRITTEN AGREEMENTS EXECUTED BY BLOOMFIELD'S REPRESENTATIVES.

Bloomfield argues that Mr. Daniloff's defense was not colorable because "Daniloff failed to present *any* evidence that even 'plausibly' supported his alternative theory of the case, which was that 'Bloomfield made an investment in the [Fund] as an investor and that the $25 million did not represent a loan.'" (Fee App. at 6 (quoting Dec. at 30.)) The Second Circuit has established that "[a] claim is colorable, for purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980).

Whether Mr. Daniloff's belief that the Subscription Agreement was enforceable was "reasonable" must be considered in the context of the incontrovertible facts. Bloomfield has sued Mr. Daniloff to avoid its clear obligations to the Fund under the written, fully executed Subscription Agreement – to which Mr. Daniloff is not a party – on the grounds that an alleged oral agreement by third parties nullifies the agreement between Bloomfield and the Fund. As the

9

incontrovertible facts demonstrate, (i) Bloomfield – the sole plaintiff in this action – is not, and has never alleged that it was, a party to any agreement with the defendant, Mr. Daniloff, (ii) the only relevant agreement to which Bloomfield is a party is the Subscription Agreement with the Fund, which Bloomfield freely executed, and to which the Fund is the only counterparty, and (iii) non-party Mr. Reuben is not now, nor has he ever been, party to Bloomfield's agreement with the Fund. Bloomfield has not alleged and has not offered any evidence demonstrating that either Bloomfield or the Fund sought at any time to amend or terminate Bloomfield's commitments under the Subscription Agreement. Bloomfield has not cited any legal authority supporting its assertion that that an alleged oral agreement between Mr. Reuben and Mr. Daniloff, who are not parties to Bloomfield's agreement with the Fund, has nullified Bloomfield's commitments to the Fund under the Subscription Agreement.

In light of these indisputable facts, borne out by the documentary and testimonial evidence Mr. Daniloff adduced at trial, it simply cannot be inferred, much less demonstrated, that Mr. Daniloff's belief that the Subscription Agreement is enforceable by its terms is not reasonable. This remains true "[e]ven if some or all of these facts were not in fact true or might later fail to be established, [which] is irrelevant to the determination of bad faith under our law," because "[t]o require more would promote the unwarranted abortion of many potentially meritorious claims." *Nemeroff*, 620 F.2d at 349.

In light of the foregoing and Bloomfield's failure to cite even a single case supporting its argument that a party's reliance on a written, fully executed agreement for its defense is not

10

"colorable,"[5] Bloomfield has failed to demonstrate that Mr. Daniloff's defense based on the enforceability of the Subscription Agreement was not colorable.

## II. BLOOMFIELD HAS FAILED TO DEMONSTRATE THAT MR. DANILOFF HAS DEFENDED AGAINST BLOOMFIELD'S CLAIMS FOR AN "IMPROPER PURPOSE".

In its effort to establish that Mr. Daniloff has invoked the written, fully executed Subscription Agreement for an improper purpose, Bloomfield simply restates its colorability argument. Specifically, Bloomfield asserts that because "[t]he record is clear that Daniloff intentionally caused the parties to litigate for the better part of a decade on the basis of 'facts' that he knew were false," he *a fortiori* "defended this action with an improper purpose." (Fee App. at 9.) Bloomfield has cited no authority for this assertion. Indeed, if that were the case, the "improper purpose" element would be eliminated from the standard.

As a backup, Bloomfield also cites as evidence that Mr. Daniloff litigated with an "improper purpose" his purported efforts to delay the litigation by participating with Bloomfield in mutually agreed upon settlement and mediation efforts that did not yield a resolution. Even if it were true that Mr. Daniloff sought to delay the proceedings – which he did not – Bloomfield

---

[5] *Sierra Club*, on which Bloomfield relies heavily, does not support Bloomfield's argument. In that case, the Second Circuit affirmed an award of attorneys' fees because defendants' arguments that they had taken such actions as necessary to discharge their relevant duties was not "colorable" because defendants had provided no evidence that they had taken any such actions. *Sierra Club v. United States Army Corps of Engineers*, 776 F.2d 383, 390-392 (2d Cir. 1985). Likewise, *Torah Soft* and *RGC* do not bear on the question of whether a party's efforts to enforce a written, fully executed agreement are uncolorable for purposes of the "bad faith" exception to the American Rule. In *Torah Soft*, the magistrate did not address the American Rule or the "bad faith" exception but, instead, found fee shifting appropriate under the federal copyright laws. *Torah Soft Ltd. v. Drosnin*, No. 00 Civ. 5650 (JCF), 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001). In *RGC*, the court awarded attorneys' fees because the parties' term sheet provided for fee-shifting. The Court noted briefly, and without analysis, that the "bad faith" exception would also apply because "[t]his litigation would not have been necessary if [defendant] had behaved in a minimally responsible fashion." Of course, this is not the applicable standard.

11

fails to offer any legal authority supporting this assertion. To the contrary, efforts to delay proceedings are not sufficient to establish that the litigant is acting with an "improper purpose" as required for the "bad faith" exception. *See China Shipping Container Lines Co. LTD v. Big Port Service DMCC*, No. 15-cv-2006 (AT) (DF), 2020 WL 3966014 (S.D.N.Y. May 15, 2023) (citations and quotations omitted) (denying plaintiffs' application for attorneys' fees because "while this Court acknowledges that [defendant]'s litigation efforts in this action caused [plaintiff] to experience a delay in achieving the outcome it sought, delay alone does not rise to the level of sanctionable conduct contemplated by the case law").[6]

Moreover, any assertion that Mr. Daniloff was defending against Bloomfield's claims to give himself leverage in resolving the dispute would be insufficient to establish that Mr. Daniloff litigated this dispute with an improper purpose. *See Browning Debenture Holders Committee v. DASA Corp.*, 560 F. 2d 1078, 1080 (2d Cir. 1977) (reversing award of attorneys' fees notwithstanding district court's findings that "much of the litigation for the within suit is plaintiffs' desire to bargain defendant to a lower conversion price [for plaintiffs' debentures]" and that "the real injury which plaintiffs are seeking to cure is their failure to achieve a low conversion price [for their debentures]" (*Browning Debenture Holders Committee v. DASA Corp.*," 431 F. Supp. 959, 964 (S.D.N.Y. 1976) (citations and quotations omitted).

Finally, Bloomfield's argument that an "improper purpose" is demonstrated by Mr. Daniloff's conduct prior to the litigation because that conduct left Bloomfield no recourse but

---

[6] *Sierra Club* does not support Bloomfield's argument because, in that case, the court found that defendants had purposefully created a misleading document to protect themselves in the event of a dispute, which is not the case here. *Sierra Club*, 776 F.2d 383, 391 (2d Cir. 1985) (citations and quotations omitted) (agreeing with the district court's findings that "[i]t is perfectly obvious that the intention of the agency was to have this 'record' available to forestall or rebut a challenge to the agency action," and that "[t]his is exactly the use that has been made of these materials.")

to sue also fails as a matter of law. To support its assertion, Bloomfield cites to an unpublished trial court order for the proposition that the Court may also award attorneys' fees if it finds that the fees were incurred as a result of (i) an 'intentional and calculated action' that (ii) left 'the plaintiff with only one course of action: that is, litigation.'" (Fee App. at 9 (citing *Central Freight Lines, Inc. v. Amazon Fulfillment Servs.*, 2019 U.S. Dist. LEXIS 88065 (S.D.N.Y. May 15, 2020)). However, when the plaintiff in that matter brought a motion for an award for attorney's fees, the court flatly rejected plaintiff's contention that the law allows fees "because [defendant] left [plaintiff] with no choice but to litigate." *Central Freight Lines, Inc. v. Amazon Fulfillment Servs.*, 441 F. Supp.3d 1128 (W.D. Wash. 2020). Indeed, the court stated presciently that allowing an award of attorneys' fees in such an instance "would destroy the American Rule of attorney fees in every intentional tort case and every intentional breach of contract case." *Id.*[7]

### III. BLOOMFIELD HAS FAILED TO PROPERLY SUPPORT ITS CLAIM FOR ATTORNEYS' FEES.

For the reasons set forth above, Bloomfield is not entitled to an award of attorneys' fees. Even if it was, however, Bloomfield's demand for $5,180,660.25 is excessive and unsupported by the Declaration of Steven Cooper filed in support of Bloomfield's fee application (the "Cooper Declaration" or "Cooper Decl."). It is well settled that when considering applications for attorneys' fees, federal courts look to an array of factors including the twelve set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 430 n3 (1983), namely (i) the time and labor required, (ii) the novelty and difficulty

---

[7] Plaintiffs' citation to *Auriga* does not further their effort to conjure an "improper purpose." In that case, plaintiff minority investors sued the manager of an LLC that held a long-term lease on a valuable golf course. *Auriga Capital Corp. v. Gatz Properties, LLC*, 40 A.D.3d 839 (Del. Ch. 2012). The court found that the manager had acted in "bad faith" by taking aggressive actions to enable him to buy the golf course for a fraction of its value in derogation of the minority members' rights. The court concluded that "in cases of serious loyalty breaches, such as here, equity demands that the remedy take the reality of litigation costs into account as part of the overall remedy, lest the plaintiffs be left with a merely symbolic remedy." Bloomfield has claimed no such loyalty breach here. *Id.*

13

of the questions, (iii) the skill requisite to perform the legal service properly, (iv) the preclusion of employment by the attorney due to acceptance of the case, (v) the customary fee, (vi) whether the fee is fixed or contingent, (vii) time limitations imposed by the client or the circumstances, (viii) the amount involved and the results obtained, (ix) the experience, reputation, and ability of the attorneys, (x) the "undesirability" of the case, (xi) the nature and length of the professional relationship with the client; and (vii) awards in similar cases.

Bloomfield has not addressed any of these factors. In place of such analysis, the Cooper Declaration states, without further support, that "[Mr. Cooper] ha[s] maintained a lean team of highly qualified attorneys in sufficient number to efficiently and effectively prosecute Bloomfield's claims." (Cooper Decl. ¶ 4.) Although Mr. Cooper includes a list of no less than 54 individual timekeepers "who logged on at least ten hours throughout the life of this action," he neglects to identify which of those timekeepers are attorneys, how many hours each timekeeper worked, and for how long each timekeeper worked on the litigation. (Cooper Decl. ¶ 7.) Further, although Mr. Cooper states that "[he] believe[s] that Reed Smith's billing rates for partners, associates, and support professionals throughout this action were reasonable and in line with the rates charged by similar firms," he neglects to provide attorneys' billing rates. (Cooper Decl. ¶ 7.) Mr. Cooper acknowledges that discounts are required to reflect work done for a separate matter and states, without any explanation, that counsel has discounted its fee demand by $550,000 to account for that work. Bloomfield should be required to support this amount with greater specificity. Mr. Cooper identifies fifteen separate tasks "that were necessary to prevail in this lawsuit over the past seven years," as well as more than 900 pages of invoices, but with no indication of how the fees billed in the invoices relate to the fifteen identified tasks. (Cooper Decl. ¶ 15, Ex. 1 (parts 1 and 2).)

In light of the absence of material information as discussed above, Bloomfield's Fee Application, should be denied or, at the very least, deferred until a proper inquest can be conducted.

## CONCLUSION

For all the foregoing reasons, Bloomfield's application for attorneys' fees should be denied together with such other and further relief as the Court may deem proper.

Dated: July 11, 2023

                                          Respectfully submitted,

                                          **TARTER KRINSKY & DROGIN LLP**

                                          By:    */s/ Richard J.L. Lomuscio*
                                                    Richard J.L. Lomuscio
                                                    Charles M. Miller
                                                    Melissa DeCandia
                                        1350 Broadway
                                        New York, New York 10018
                                        Tel.: (212) 216-8000
                                        Facsimile: (212) 216-8001
                                        Email: rlomuscio@tarterkrinsky.com
                                        Email: cmiller@tarterkrinsky.com
                                        Email: mdecandia@tarterkrinsky.com

                                        *Attorneys for Defendant Elliot Daniloff*