USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/21/2024

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BLOOMFIELD INVESTMENT RESOURCES CORP.,

                        Plaintiff,

        - against -

ELLIOT DANILOFF,

                     Defendant.

**17 Civ. 4181 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

Now before the Court is Plaintiff Bloomfield Investment Resources Corporation's ("Bloomfield") Motion for Attorneys' Fees and Costs Under Rule 54(d) (<u>see</u> Dkt. No. 114) against Defendant Elliot Daniloff ("Daniloff"), requesting an award of reasonable attorneys' fees and costs in the amount of $5,180,660.25. For the reasons stated below, Bloomfield's Fee Application is hereby **DENIED**.

## I.   <u>BACKGROUND</u>[1]

Bloomfield brought the instant action against Daniloff for fraud, breach of contract, promissory estoppel, and unjust enrichment. (<u>See</u> Dkt. No. 51.) In short, Bloomfield alleged that it loaned $25 million to a company owned by two investment funds (the "Synergy Hybrid Funds") that were

---

[1] The reader is presumed to be familiar with the background and context of this litigation. A fuller description of the case's factual background can be found in the Court's May 23, 2023 Decision and Order. (<u>See</u> Dkt. No. 108.) As such, the Court does not recount this factual background in full here.

managed by entities entirely owned and controlled by Daniloff. Bloomfield alleged that it had loaned this money in reliance on Daniloff's fraudulent promises and that it had not been repaid in violation of the parties' oral agreement. In defense, Daniloff maintained that Bloomfield's transfer of $25 million to Daniloff's company constituted an equity investment into the investment funds, with no guarantee of repayment.

After conducting a four-day bench trial in October 2022, the Court entered its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. (See Dkt. No. 108 [hereinafter the "Decision".].) The Court found that Bloomfield had produced sufficient evidence to establish that Daniloff was liable to Bloomfield for fraudulent inducement and breach of the oral loan agreement. As a result, the Court concluded that Bloomfield was entitled to compensatory and punitive damages on those claims.

After the Court entered judgment for Bloomfield, Bloomfield filed its Motion for Attorneys' Fees and Costs under Rule 54(d) on June 27, 2023 (see Dkt. No. 114), along with a memorandum of law in support of this motion (see Dkt. No. 115 [hereinafter "Fee Application" or "Fee App."].) Bloomfield also submitted a Declaration attesting to

Bloomfield's legal fees throughout the course of the litigation. (See Dkt. No. 116.) Daniloff submitted a memorandum of law in opposition to the Fee Application on July 11, 2023 (see Dkt. No. 117 [hereinafter "Opp."]), and Bloomfield submitted its reply memorandum of law in further support of its Fee Application on July 21, 2023 (see Dkt. No. 118 [hereinafter "Reply"]).[2]

## II.  DISCUSSION

Bloomfield contends that the Court should award it attorneys' fees and costs pursuant to the Court's inherent equitable power. (See Fee App. at 5.) Specifically, Bloomfield argues that the Court should apply the "bad faith exception" and award attorneys' fees here because "Daniloff's fundamental theory of the case was factually baseless" and because "he litigated that theory for vexatious and improper purposes." (Fee App. at 6.) For the reasons stated below, the Court concludes that Bloomfield is not entitled to fee shifting.

A. Legal Standard

While prevailing parties are permitted to apply for an award of attorneys' fees and costs under Federal Rule of Civil

---

[2] Also on July 21, 2023, Daniloff filed a Notice of Appeal of the Court's Decision (see Dkt. No. 113), only to withdraw the appeal (see Dkt. No. 122) before timely reinstating the Notice of Appeal on September 29, 2023 (see Dkt. No. 123).

Procedure 54(d), they are ordinarily not entitled to recover attorneys' fees under the "American Rule," absent statutory authority or by contract. See Sierra Club v. Army Corps of Eng'rs, 776 F.2d 383, 390 (2d Cir. 1985). However, the Supreme Court has recognized that courts may exercise their inherent equitable powers to shift attorneys' fees in limited circumstances. See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-60 (1991). One such circumstance is the "bad faith exception," which applies when the non-prevailing party "has commenced or conducted an action 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Dow Chem. Pac. Ltd. v. Rascator Mar. S.A., 782 F.2d 329, 344 (2d Cir. 1986) (quoting F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129 (1974)); see Eisemann v. Greene, 204 F.3d 393, 395 (2d Cir. 2000).

To prevail on a motion to shift fees, the moving party must provide "clear evidence" that the losing party's claims were (1) "entirely without color," and (2) "were made in bad faith." Mali v. Fed. Ins. Co., 720 F.3d 387, 394 (2d Cir. 2013). "[A] claim is 'entirely without color' when it lacks any legal or factual basis." Sierra Club, 776 F.2d at 390 (citation omitted). A bad faith claim is one "motivated by improper purposes such as harassment or delay." Schlaifer Nance & Co., Inc. v. Est. of Warhol, 194 F.3d 323, 336 (2d

Cir. 1999). A party seeking fees must satisfy both elements to prevail. See Sierra Club, 776 F.2d at 390 ("The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice.").

Finally, the Second Circuit has cautioned that the inherent power to award attorneys' fees "must be applied with caution to make sure that [litigants] are not deterred from . . . enforc[ing] their rights." Nemeroff v. Abelson, 704 F.2d 652, 654 (2d Cir. 1983); see ED Cap., LLC v. Bloomfield Inv. Res. Corp., 316 F.R.D. 77, 83 (S.D.N.Y. 2016) ("[T]he Court may only award attorneys' fees under its inherent authority in exceedingly limited circumstances."). Accordingly, the Second Circuit requires "a high degree of specificity in the factual findings of lower courts when attorneys' fees are awarded on the basis of bad faith." Kanematsu-Gosho Ltd. v. M/T Messiniaki Aigli, 814 F.2d 115, 119 (2d Cir. 1987) (quoting Weinberger v. Kendrick, 698 F.2d 61, 80 (2d Cir. 1982)). "Such an award is restricted to circumstances where there is *clear evidence* that a party commenced an action with the *sole aim* of harassment or delay or for another improper purpose." ED Cap., LLC, 316 F.R.D. at 83 (emphasis added). Thus, courts "will only uphold [fee shifting] under the bad faith exception when 'serious misconduct clearly appears on the record.'" Id. (quoting

<u>Milltex Indux. Corp. v. Jacquard Lace Co.</u>, 55 F.3d 34, 41 (2d Cir. 1995)).

B. <u>Analysis</u>

Under this exacting standard, the Court holds that although Bloomfield's application satisfies the first element of the bad faith test, it fails to meet the second element and thus Bloomfield is not entitled to fee shifting. The Court finds that Bloomfield has not established that Daniloff engaged in the sort of dilatory and vexatious litigation tactics that satisfy the standard for the "bad faith" exception in this Circuit.

On the first element of the bad faith exception, Bloomfield has carried its burden. The Court found after trial that Daniloff's conduct made him liable for fraudulent inducement and breach of contract, that Daniloff's legal defenses were meritless, and that Daniloff lacked credibility in his testimony, which ran counter to the evidence admitted at trial. <u>See</u> <u>Sierra Club</u>, 776 F.2d at 790 ("[A] claim is 'entirely without color' when it lacks any legal or factual basis." (citation omitted)).

Daniloff's "theory of the case" was that he "never misrepresented that Bloomfield made an investment in the Synergy Hybrid Fund[s] as an investor and that the $25 million did not represent a loan." Decision at 30. But, after

6

reviewing the parties' extensive proposed findings of fact and conclusions of law, deposition designations, and pretrial briefs, and following a four-day bench trial where the Court heard testimony from seven live fact witnesses, the Court concluded that Daniloff's arguments were legally and factually baseless. The Court found that the overwhelming evidence adduced at trial established that both parties always understood that the $25 million would be a loan, not an equity investment in the Synergy Hybrid Funds as Daniloff maintained. See id. (stating that testimony and email evidence contradicted Daniloff's theory of the case). The Court concluded that "neither the testimony nor the evidence presented at trial support Daniloff's contentions," id. at 42, and the Court "did not find that the testimony or evidence Daniloff presented was credible," id. at 26. Indeed, the Court found that none of the testimony or other evidence Daniloff offered even "*plausibly* supported a finding embodying Daniloff's version of the material facts in dispute." Id. (emphasis added).

In its Decision, the Court emphasized Daniloff's lack of credibility and factual support at trial. The Court found that Daniloff persisted in making baseless arguments without support and in conflict with the clear evidence showing that

he (and Bloomfield) always understood the $25 million would
be a loan and not an equity investment:

> The Court found throughout the trial that Daniloff was
> not a credible witness. His testimony was often
> inconsistent or contradictory and his explanations
> unpersuasive. He maintained that the $25 million was
> never a loan even when confronted with emails in which
> he confirmed an obligation to repay Bloomfield, and
> either affirmed or failed to deny the terms of the [oral
> agreement]. He frequently claimed he was not able to
> remember salient events that occurred throughout this
> saga, and that were vital to the parties' agreement. For
> example, he claimed he did not remember that the $25
> million was to be kept in a restricted bank account over
> which Bloomfield would have signatory control -- details
> of which were manifestly critical to the underlying
> transaction and had been memorialized in multiple email
> correspondences over the course of several years between
> the parties.
>
> Further, at trial, Daniloff was confronted with clear
> evidence demonstrating that despite his purported
> disagreement, he failed to dispute any of Bloomfield's
> recitation of the [oral agreement] in the emails
> introduced into the record. Daniloff incredibly
> rationalized his failure to correct the parties'
> supposedly erroneous understanding by asserting that he
> "had no obligation to respond because everything that
> was sent in the emails was absolutely incorrect."

Decision at 25-26 (citations, alterations, and omission
omitted).

For example, one witness testifying for Bloomfield
stated "that Daniloff expressly indicated to him that the $25
million needed to be shown as equity via the Synergy Hybrid
Fund[s] in order to borrow against it, even though the money
was to be given as a loan." Id. at 30. And "email
correspondences between the parties starting in 2011 through

8

2015 reveal that the parties, including Daniloff, always operated with the understanding that the $25 million constituted a loan, subject to full repayment and consistent with the [oral agreement], and not an investment." Id. at 33. Yet "[a]t no point until he retained counsel in 2015 did Daniloff assert that the funds" were an investment and not a loan. Id. The Court's findings here are more than sufficient to establish that Daniloff's arguments in this litigation were entirely without color, satisfying the first element of the bad faith exception. See Sierra Club, 776 F.2d at 390.

Nevertheless, a finding that a party's claims were "entirely without color" is not enough to entitle the prevailing party to recover attorneys' fees. A party seeking legal fees must also satisfy the second element of the bad faith exception by showing with "clear evidence" that the opposing party acted with an "improper purpose" such as to harass or delay an opposing party. Id. Improper purpose "may be evidenced by conduct occurring either before or during trial." Id.; see Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986) ("Bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." (quoting Hall v. Cole, 412 U.S. 1, 15 (1973) (quotation marks and alteration omitted)). The Second Circuit has "interpreted the bad faith standard restrictively," and

courts awarding attorneys' fees must provide "*a high degree of specificity in the[ir] factual findings.*" Eisemann, 204 F.3d at 396 (emphasis in original) (quoting Dow Chem. Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986)); see Oliveri, 803 F.2d at 1272.

Under this standard, the Court finds that Bloomfield has not established with the required degree of factual specificity that Daniloff litigated this case with an improper purpose of harassment or delay. Bloomfield argues that Daniloff "defended this action with an improper purpose," in part, because "Daniloff intentionally caused the parties to litigate for the better part of a decade on the basis of 'facts' that he knew were false." (Fee App. at 9.) But "[a]lthough a frivolous position will often signal an improper purpose," the Second Circuit has "never held that a frivolous position may be equated with an improper purpose." Sierra Club, 776 F.2d at 391; see China Shipping Container Lines Co. Ltd. v. Big Port Serv. DMCC, No. 15 Civ. 2006, 2020 WL 3966014, at *8-9 (S.D.N.Y. May 15, 2020) (holding that "repeatedly present[ing] unsupported arguments to the Court" was insufficient to establish improper motive); Mahoney v. Yamaha Motor Corp., U.S.A., 290 F.R.D. 363, 369-80 (E.D.N.Y. 2013) (denying request for legal fees even if plaintiff's counsel "had knowledge that [plaintiff's] claims . . . were

meritless" because it is "improper to determine that a party acted in bad faith" merely because "that party filed a meritless claim"). So, while the Court found Daniloff's arguments unsupported and contradicted by the evidence adduced at trial (see Fee App. at 7-8), colorless arguments, alone, cannot establish improper purpose. See Sierra Club, 776 F.2d at 391 (observing this "would turn the two-part standard into a one-part standard").

In addition to pointing out the baselessness of Daniloff's legal defense, Bloomfield argues that Daniloff's litigation tactics were undertaken with the improper purpose of harassing Bloomfield and delaying recovery of the money it had loaned him. Bloomfield claims that Daniloff "deliberately planned to refuse repayment and eventually interpose a legal defense that was unmoored from reality." (Fee App. at 8.) But the only dilatory tactic during litigation that Bloomfield identifies is the parties' settlement negotiations. Bloomfield alleges that Daniloff induced Bloomfield into participating in "numerous purported settlement meetings," as well as a formal mediation, "under false pretenses" in order to delay resolution of this litigation. (Id.) Bloomfield accuses Daniloff of raising "false promises and hopes" by engaging in these settlement negotiations without any intention of following through. According to Bloomfield,

these settlement talks "simply strung out matters and caused Bloomfield to incur even more attorneys' fees [and] costs," even though Daniloff "subjectively knew" that his position was meritless. (Id.) Indeed, when the settlement negotiations reached "an agreement in principle," the parties jointly requested a stay of the litigation that lasted over a year, until the proposed settlement agreement fell apart. (Id.)

Though these settlement negotiations undoubtedly had the effect of delaying the ultimate resolution of this case, the Court is not persuaded that Daniloff's settlement tactics rise to the level of establishing bad faith. "[D]elay alone, without 'clear evidence' of bad faith, does not rise to the level of sanctionable conduct contemplated by the case law." Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic, No. 10 Civ. 5256, 2011 WL 4111504, at *11 (S.D.N.Y. Sept. 13, 2011). And although it advances a conclusory assertion that Daniloff "made serial false intimations of repayment and settlement" in order to cause further delay (Reply at 5), Bloomfield does not offer any direct evidence that Daniloff pursued settlement talks under false pretenses, such as evidence showing that Daniloff never intended to finalize a settlement agreement but feigned interest in settling in order to delay the proceedings. See Hopson v. Riverbay Corp., 190 F.R.D. 114, 123 (S.D.N.Y. 1999)

(declining to sanction attorney who made a series of misrepresentations because these errors may have been "the result of negligent preparation" rather than for the "sole[]" purpose of delay or harassment).[3]

Without such evidence, the Court cannot conclude that Daniloff's actions were taken with an improper motive. Courts in this Circuit have consistently declined to award attorneys' fees simply on the basis that the defendant improperly delayed the proceedings, even when the delay was accompanied (or even caused) by meritless legal positions. For example, in Thai Lao Lignite, the court declined to award fees against a party who raised meritless arguments and improperly delayed the litigation by first failing to meet a court-ordered deadline to produce discovery and then filing objections to the court's production order. See 2011 WL 4111504, at *11. While the court "acknowledge[d] that" the respondent's actions "caused undue delay," the court explained that the delay itself was not evidence of bad faith. Id. So though "[t]the record [wa]s unclear as to why Respondent ultimately failed to comply with the April 4 Order after representing that it would do so," id. at 9 n.7, the Petitioner failed to "offer[] 'clear evidence' that

---

[3] See also Hopson, 190 F.R.D. at 123 (noting that "the same standard applies to the court's power to sanction" under 28 U.S.C. § 1927 as applies to the court's inherent power to award attorneys' fees).

Respondent's failure to produce (and subsequent filing of the objections) was motivated by harassment, delay, or other improper purpose," id. at 11.

Similarly, in Herzlinger v. Nichter, the court declined to award fees even though the plaintiff had improperly delayed the proceedings by filing an application for a temporary restraining order ("TRO") even though injunctive relief was not available to private parties pursuant to the statute under which plaintiff brought her claims. See No. 09 Civ. 0192, 2011 WL 4585251, at *5 (S.D.N.Y. Sept. 8, 2011). This delay was compounded by the fact that, even after the court "advise[d]" plaintiff's counsel about "the deficiencies underlying his TRO application . . . in an effort to dissuade him from continuing to pursue that application," plaintiff's counsel nevertheless insisted on proceeding to oral argument. Id. Even if this baseless TRO application delayed and unnecessarily multiplied the proceedings, the court concluded that there was no evidence that plaintiff's counsel's actions (however misguided) were taken for the purpose of delay or harassment rather than to vindicate plaintiff's legal positions. See id.

There is even less evidence of "improper motive" here, where the "long delays" Bloomfield attributes to Daniloff were the result of legitimate litigation tactics -- such as

14

settlement negotiations and formal mediation -- that are ordinarily encouraged by courts. See Gambale v. Deutsche Bank AG, 377 F.3d 133, 143 (2d Cir. 2004) (observing that "courts are bound to encourage . . . and facilitate settlements" (citing United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 857 (2d Cir. 1998)); Wellman v. Dickinson, 497 F. Supp. 824, 830 (S.D.N.Y. 1980) ("Voluntary out of court settlement of disputes is highly favored in the law." (quotation marks omitted)), aff'd, 647 F.2d 163 (2d Cir. 1981); Bilello v. Abbott Labs., 825 F. Supp. 475, 479 (E.D.N.Y. 1993) ("Mediation is particularly encouraged."); cf. Fed. R. Civ. P. 16(a)(5) (listing "facilitating settlement" as one of the objectives of pretrial conferences).

Absent clear evidence of abusive conduct or improper motive, the bad faith rule should not be used in a manner that could dissuade parties from engaging in settlement talks. See Nemeroff, 704 F.2d at 654 (warning that the bad faith rule should "must be applied with caution"). If merely engaging in failed settlement talks could support a finding of bad faith, one consequence could be to discourage future litigants from coming to the settlement table. Similarly, a party engaged in settlement talks should not be afraid that, if the settlement negotiations ultimately fail to result in

a final agreement, engaging in these negotiations at all or taking too long to reject a settlement offer could be used against it later for an award of attorneys' fees. Shifting fees on this basis might encourage parties to reject settlement offers, out of fear that they will be accused of dilatory tactics later. Moreover, any concern that Bloomfield's suit was delayed is ameliorated by the fact that Bloomfield voluntarily participated in these settlement talks of its own accord and jointly requested a stay of the litigation while the parties sought to finalize their settlement agreement. Cf. In re A.T. Reynolds Sons, Inc., 452 B.R. 374, 381 (S.D.N.Y. 2011) ("Mediation is typically a voluntary process.").

Instead, courts in this Circuit typically reserve a finding of bad faith for those cases where a litigant has engaged in blatantly vexatious and illegitimate litigation tactics. The Supreme Court has explained that an award of attorneys' fees is generally directed at the "full range of litigation abuses" and "conduct which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991) (emphasis added). Attorneys' fees may therefore be awarded "if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled.'" Id. (quoting Universal Oil Products Co. v. Root Refining Co., 328

U.S. 575, 580 (1946)). Consistent with this heightened standard, courts in this Circuit have found the following abusive litigation tactics to merit an award of attorneys' fees under the "bad faith" standard:

> [R]esubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; making several insupportable bias recusal motions and repeated motions to reargue; continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased; and waiting until the eve of trial before making a jury demand.

Keller v. Mobile Corp., 55 F.3d 94, 99 (2d Cir. 1995) (quoting Hudson Motors P'ship v. Crest Leasing Enters., 845 F. Supp. 969, 982 (E.D.N.Y. 1994) (quotation marks omitted)). For instance, in Chambers, the defendant's abusive and improper conduct was beyond dispute, and included

- filing a series of "false and frivolous pleadings," motions, and delaying actions;

- bringing a parallel action before the Federal Communications Commission in an attempt to nullify the underlying purchase agreement and in "direct contravention" of the court's "orders to maintain the status quo pending the outcome of the litigation";

- forcing the court to enjoin the defendant's removal of necessary equipment from the property at issue;

- "attempt[ing] to deprive the Court of jurisdiction by acts of fraud";

- delaying the scheduled trial date by filing a frivolous "motion to recuse the judge" and, when

the motion was denied, filing a subsequent "writ of mandamus" in the Court of Appeals; and

- repeatedly "misleading and lying to the Court."

501 U.S. at 38 n.2, 39, 41-42, 57; see id. at 56-57 (describing these as "frequen[t] and sever[e] . . . abuses of the judicial system" and "part of a sordid scheme of deliberate misuse of the judicial process designed to defeat [petitioner's] claim by harassment, repeated and endless delay, mountainous expense and waste of financial resources" (quotation marks omitted)). Similarly, in Kane v. City of New York, 468 F. Supp. 586 (S.D.N.Y. 1979), the court awarded attorneys' fees to the defendants where the plaintiff was a serial litigator who filed twelve lawsuits over a claim that had been dismissed on the merits at least three times already. Id. at 592 (holding that plaintiff's "[c]ommencement of action upon action based on the same facts dressed in different garb, after thrice being rejected on the merits and having been repeatedly warned that the claims were barred by res judicata, can only be explained as malicious conduct" (footnote omitted)).

By contrast, here Bloomfield has not demonstrated that Daniloff engaged in the degree of extreme misconduct that warranted an award of attorneys' fees in those cases. Daniloff did not perpetrate a fraud on the Court, nor did he engage in

any conduct that approximated the abusive litigation tactics referenced in the cases above. That Daniloff relied on colorless claims cannot support a finding of improper purpose, and Daniloff's participation in settlement talks is plainly distinguishable from the sort of vexatious and abusive litigation tactics identified by the Second Circuit in Keller. See 55 F.3d at 99.

Lastly, Bloomfield argues that the Court may infer an improper motive here because Daniloff's collective actions were "a component" in his overall "bad faith plan" to "exploit Bloomfield's money for as long as possible, force litigation, and leverage a discount on amounts he knew he owed." (Reply at 5.) The mere fact that a party litigated with an intent to leverage a favorable settlement, without more, is insufficient to conclude that the party litigated in bad faith. See Thai Lao Lignite, 2011 WL 4111504, at *11 (requiring "clear evidence" that respondent's actions were "motivated by harassment, delay, or other improper purpose").

In support of its contention, Bloomfield offers several out-of-circuit decisions, mostly from the Delaware Court of Chancery (see Fee App. at 9), that found bad faith where defendants "purposefully stiffed" plaintiffs and forced them to litigate in order to pressure plaintiffs to "settle for pennies on the dollar." RGC Int'l Inv'rs, LDC v. Greka Energy

19

Corp., 2001 WL 984689, at *19 (Del. Ch. Aug. 22, 2001) (holding bad faith can be found where the losing party "resort[s] to burdensome and protracted litigation in hopes of discouraging the plaintiffs from enforcing their contractual rights despite the indefensibility of the defendant's legal position"). However, the Court finds these out-of-circuit decisions inconsistent with the much more rigorous standard employed in this Circuit. E.g., id. (analyzing the Delaware Court of Chancery's "equitable discretion to award attorneys' fees as costs under 10 Del C. § 5106 and Court of Chancery Rule 54(d)").[4] Compare id. at 19 n.111 (finding bad faith because defendant had advanced arguments that, "to be charitable, had minimal grounding in fact or law" and "made this litigation more expensive than it should have been"), and Auriga Cap'l Corp. v. Gatz Props., 40 A.3d 839, 881 (Del. Ch. 2012) (finding bad faith because "[t]he record is regrettably replete with behavior by [defendant] and his counsel that made this case unduly expensive for the [plaintiff] to pursue," including

---

[4] The Court notes that the Delaware Court of Chancery's decision in RGC International Investments was expressly overturned by the Delaware Supreme Court in Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund, 68 A.3d 665 (Del. 2013), which held that the use of the word "costs" in the Delaware statute governing fee shifting (10 Del C. § 5106) was a "term of art that *does not include attorneys' fees*." Id. at 685, n.94 (emphasis added). This further illustrates how the fee shifting standard employed in the Delaware Court of Chancery, which arises from statute, differs from the standard employed in this Circuit, which arises from the court's inherent powers.

defendant's reliance on "legally and factually implausible assertions" and "frivolous arguments," which led the court to conclude "my sense is that this was part of [defendant's] strategy . . . to exhaust the [plaintiffs] and hope they would settle on the cheap"), with Sierra Club, 776 F.2d at 391 (emphasizing that the Second Circuit "ha[s] never held that a frivolous position may be equated with an improper purpose" because doing so "would turn the two-part standard into a one-part standard"), Mahoney, 290 F.R.D. at 369-70 (holding that it is "improper to determine that a party acted in bad faith" merely because "that party filed a meritless claim"), and Thai Lao Lignite, 2011 WL 4111504, at *11 (holding that "delay alone, without 'clear evidence' of bad faith, does not" establish that respondent was "motivated by . . . [an] improper purpose"). Thus, to the extent the Delaware Court of Chancery permits an inference of bad faith when a defendant's reliance on meritless arguments drives up the cost of litigation or induces a plaintiff to settle, that standard cannot be squared with the exacting standard employed in this Circuit.

Other than these decisions from the Delaware Court of Chancery, Bloomfield relies on Torah Soft Ltd. v. Drosnin, No. 00 Civ. 5650, 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001). However, Torah Soft Ltd. did not address the "bad faith"

exception to the American Rule at all, but rather involved the standard for awarding attorneys' fees by statute. See id. at *3 (applying 17 U.S.C. § 505, which states that in copyright actions the court "may . . . award a reasonable attorneys' fee to the prevailing party as part of the costs").

The Court therefore concludes that Bloomfield has not offered "the clear evidence of bad faith necessary to invoke the Court's inherent power to deviate from the general rule against fee-shifting in the absence of any specific rule or statutory authority." Sherman, LLC v. DCI Telecomms., Inc., No. 03 Civ. 0855, 2003 WL 21692763, at *5 (S.D.N.Y. July 21, 2003); see Thai Lao Lignite, 2011 WL 4111504, at *11.[5]

### III. **CONCLUSION**

For the reasons stated above, the Court **DENIES** the motion of plaintiff Bloomfield Investment Resources Corp. for an award of attorneys' fees and costs against defendant Elliot Daniloff under Federal Rule of Civil Procedure 54(d). The Clerk of the Court is respectfully directed to close the pending motion at Dkt. No. 114.

---

[5] Because the Court decides that Bloomfield is not entitled to an award of attorneys' fees under the "bad faith" exception, the Court does not decide whether Bloomfield's calculation for attorneys' fees is reasonable. (See Fee App. at 10-12; Opp. at 13-14; Reply 7-8.)

**SO ORDERED.**

```
Dated:      21 February 2024
            New York, New York
```

_____

Victor Marrero
U.S.D.J.